559 A.2d 550

Bonnie B. LIRA and Jose Lira, h/w

v.

ALBERT EINSTEIN MEDICAL CENTER.

Appeal of Jose LIRA in his own Right and as Administrator of the Estate of Bonnie B. Lira.

Bonnie B. LIRA and Jose Lira, h/w

v.

Gary PEARLSTEIN, M.D.

Appeal of Jose LIRA.

Bonnie B. LIRA and Jose Lira, h/w, Appellees,

v.

Gary PEARLSTEIN, M.D., Appellant.

Superior Court of Pennsylvania.

Argued Jan. 11, 1989.

Filed May 25, 1989.

504

506

Jayne A. Piarulli, Philadelphia, for appellant (at Nos. 2090 and 2091) and appellee (at No. 2338).

Charles A. Fitzpatrick, III, Philadelphia, for appellee (at Nos. 2090 and 2091) and appellant (at No. 2338).

Before CAVANAUGH, WIEAND and MELINSON, JJ.

WIEAND, Judge:

In this medical malpractice action, the trial court awarded a new trial on motion of the defendant-health care providers because of an erroneous evidentiary ruling which permitted a witness to testify that when the plaintiff-patient was examined by a non-testifying physician, the physician asked, "Who's the butcher who [did] this?" On appeal, the plaintiffs argue that the physician's declaration was properly received and did not warrant a new trial. In a cross-appeal, the defendant-health care providers argue that the trial court should have entered a judgment n.o.v. in their favor. We affirm the order awarding a new trial.

In January, 1981, Bonnie Lira, a young homemaker and professional singer, was admitted to the Albert Einstein Medical Center (AEMC) with complaints of abdominal pain. Exploratory surgery was performed, and Lira was diagnosed as having Crohn's disease, an acute gastrointestinal illness. During this hospital stay, which lasted approximately a month, a nasogastric tube was inserted through Mrs. Lira's nose to suction fluids from her stomach, and two surgical procedures were performed by which the patient was intubated with endotracheal tubes.

On May 13, 1981, Mrs. Lira was taken to the emergency room at AEMC because of diarrhea, abdominal pain, and distension. Dr. Stanton Carroll was on duty at that time and was assisted by Dr. Gary Pearlstein, a surgical resident. Pearlstein inserted a nasogastric tube into the patient's throat via the right nostril in order to make use of a suction machine. Mrs. Lira testified in a deposition [1] that she felt the tube become stuck in the area of her Adam's Apple while it was being inserted and that she then experienced a jabbing, cutting pain. By the time the insertion had been completed she began spitting up blood and experienced severe pain. The tube remained in place until Mrs. Lira was discharged, following which she continued to experience pain and discomfort of the throat. Early in 1982, she

1. Bonnie Lira died prior to trial because of complications from Crohn's disease. Her deposition was used at trial.

suffered respiratory distress, and an emergency tracheotomy was performed. She remained dependent upon her tracheotomy tube until she died three and a half years later.

During her lifetime, Mrs. Lira and her husband, Jose, commenced actions against AEMC, Dr. Carroll, Dr. Pearlstein and several other physicians. Ultimately, however, the other physicians were removed as party defendants, and the consolidated action went to trial against AEMC and Drs. Carroll and Pearlstein. The trial court directed a verdict in favor of Dr. Carroll, and the jury returned a verdict against AEMC and Dr. Pearlstein in favor of Bonnie Lira (deceased) for $150,000.00 and in favor of Jose Lira, her husband, for loss of consortium in the amount of $125,000.00.

A judgment n.o.v. may be entered only in a clear case where the facts are such that no two reasonable persons can fail to agree that the verdict is improper. *Fleck v. Durawood, Inc.,* 365 Pa.Super. 123, 127, 529 A.2d 3, 5 (1987); *Northwest Savings Ass'n. v. Distler,* 354 Pa.Super. 187, 191, 511 A.2d 824, 825 (1986). In ruling upon a defendant's motion for judgment n.o.v., the trial court is required to consider the evidence, as well as all reasonable inferences which may be drawn therefrom, in the light most favorable to the plaintiff who won the verdict. *Vernon v. Stash,* 367 Pa.Super. 36, 45–46, 532 A.2d 441, 445–446 (1987), quoting *Maravich v. Aetna Life & Casualty Co.,* 350 Pa.Super. 392, 396, 504 A.2d 896, 898 (1986) and *Kearns v. Clark,* 343 Pa.Super. 30, 34–35, 493 A.2d 1358, 1360 (1985). In determining whether the evidence is sufficient to support the verdict, a reviewing court must consider all the evidence received, whether the trial court's evidentiary rulings thereon were correct or incorrect. See: *Niles v. Fall Creek Hunting Club, Inc.,* 376 Pa.Super. 260, 265, 545 A.2d 926, 929 (1988); *Dorn v. Stanhope Steel, Inc.,* 368 Pa.Super. 557, 565, 534 A.2d 798, 802 (1987).

To establish a case of professional negligence, the plaintiffs were required to show that the professional conduct of Dr. Pearlstein fell below the standards of reasonable medical practice and that Mrs. Lira's injuries were

caused by the failure to adhere to such standards. *Brannan v. Lankenau Hospital,* 490 Pa. 588, 595, 417 A.2d 196, 199 (1980); *Corbett v. Weisband,* 380 Pa.Super. 292, 551 A.2d 1059, 1064 (1988). As a general rule, expert testimony is required to establish the standard of reasonable medical care. *Brannan v. Lankenau Hospital, supra* 490 Pa. at 595–596, 417 A.2d at 199–200; *Brophy v. Brizuela,* 358 Pa.Super. 400, 405, 517 A.2d 1293, 1296 (1986). The standard by which an expert witness is qualified is a liberal one. "If a witness has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his [testimony] is for the jury." *Kuisis v. Baldwin–Lima–Hamilton Corp.,* 457 Pa. 321, 338, 319 A.2d 914, 924 (1974); *Vernon v. Stash, supra,* 367 Pa.Superior Ct. at 51, 532 A.2d at 448. The admission of expert testimony is a matter which rests largely in the discretion of the trial court, and its ruling thereon will not be reversed absent an abuse of discretion. *Pirches v. General Accident Insurance Co.,* 354 Pa.Super. 303, 307, 511 A.2d 1349, 1351 (1986). Moreover, there is an exception to the general rule requiring expert testimony where the matter is so simple and the lack of skill so obvious as to be within the comprehension of non-professional persons. See: *Brannan v. Lankenau Hospital, supra* 490 Pa. at 598, 417 A.2d at 201; *Chandler v. Cook,* 438 Pa. 447, 451 n. 1, 265 A.2d 794, 796 n. 1 (1970).

■ In this case, Dr. Maurice Romy testified as plaintiffs' expert. He explained that forcing the tube into the patient's trachea while attempting to insert it into the esophagus had caused a traumatic "dislocation of the, what we call the arytenoid cartilage, and swelling and laceration of the vocal cord." This, he said, was "likely to happen if an NG tube is placed in a traumatic fashion." In his opinion, Mrs. Lira had "received medical care falling below the standard ... expected ... in [the] medical community." He had personally examined Mrs. Lira's throat and had also examined her hospital records, as well as the deposition testimo-

ny which she gave prior to death. Mrs. Lira had testified as follows:

> When he got to my throat, it got stuck and he was hurting me, and I felt him jabbing with the plastic. And it was hurting until he finally pushed it through and then I coughed up blood.

The testimony of Mrs. Lira and Dr. Romy was sufficient to establish that it was professional negligence by Dr. Pearlstein which had caused the wife-plaintiff's injury. The trial court properly denied defendants' motion for judgment n.o.v.

Appellants argue, however, that Dr. Romy was not an otolaryngologist and, therefore, should not have been permitted to testify. We disagree. Romy was a licensed physician who was board certified in neurology. He had also had several months' training in otolaryngology, the specialty dealing with the larynx and trachea. Dr. Romy had initially examined Mrs. Lira for the purpose of determining whether there was a neurological basis for her throat problem. He had ruled this out and concluded that the problem was associated with the traumatic forcing of the nasogastric tube into the patient's trachea. The trial court determined that Romy had sufficient skill, knowledge, and experience and that his opinion would aid the jury in its search for truth. See: *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 608, 533 A.2d 436, 440 (1987); *Dambacher v. Mallis,* 336 Pa.Super. 22, 35–36, 485 A.2d 408, 415 (1984). We find in the trial court's ruling no abuse of discretion. Experts in one area of medicine may be found qualified to address other areas of specialization where the specialties overlap in practice or where the specialist has had experience in a related field of medicine. *McDaniel v. Merck, Sharp & Dohme, supra* 367 Pa.Super. at 612, 533 A.2d at 442. See: *Kearns v. Clark, supra; Ragan v. Steen,* 229 Pa.Super. 515, 331 A.2d 724 (1974).

When Jose Lira was called as a witness, he testified as follows:

[MR. LIRA]: I remember the day I take my wife to see [Dr. Silberman], and we wait like everybody else; and as our turn to sit there and see what's wrong, he put my wife in the chair—

[PLAINTIFF'S COUNSEL]: Were you in the room with your wife with the doctor?

[MR. LIRA]: I was with my wife in the room, yes, I was.

[PLAINTIFF'S COUNSEL]: And tell us what you observed.

[MR. LIRA]: My wife was following the instructions from the doctor, open your mouth, and the doctor is looking inside with some kind of instruments and lights, and he said: Who's the butcher who do this!

[DEFENSE COUNSEL]: Objection, Your Honor. In fact, I move for a mistrial with that statement, Your Honor.

THE COURT: Overruled.

Dr. Silberman was not present in court and did not testify. During closing argument to the jury, plaintiff's counsel referred to Lira's testimony, saying: "You will remember that Dr. Silberman examined her throat and asked Bonnie Lira, 'Who butchered you?'" A defense objection to the argument by plaintiff's counsel was sustained, and the jury was told that the testimony "was not proper testimony for you to consider." A motion for mistrial, however, was denied. In response to a defense motion for new trial, the trial court, with commendable candor, determined that its evidentiary ruling had been erroneous and, despite the subsequent sustaining of a defense objection to a reference to the testimony by plaintiff's counsel, may have contributed to the verdict. Therefore, a new trial was awarded. Plaintiffs argue on appeal that the physician's declaration was admissible as an excited utterance or present sense impression exception to the hearsay rule. We disagree.

Dr. Silberman's statement was clearly hearsay. It was an extrajudicial statement offered to prove the truth of the matter asserted, i.e., that Mrs. Lira had been "butchered." See: *Hreha v. Benscoter*, 381 Pa.Super. 556, 565, 554 A.2d

525, 528 (1989); *Spotts v. Reidell,* 345 Pa.Super. 37, 42, 497 A.2d 630, 633 (1985); *Commonwealth v. Cassidy,* 315 Pa. Super. 429, 433, 462 A.2d 270, 272 (1983). Hearsay evidence is inadmissible unless it falls within a recognized exception to the exclusionary rule. *Kemp v. Qualls,* 326 Pa.Super. 319, 327, 473 A.2d 1369, 1373 (1984). See also: *Niles v. Fall Creek Hunting Club, Inc., supra* 376 Pa.Super. at 273, 545 A.2d at 933. Even if it falls within an exception to the rule, however, hearsay evidence may not be received unless it is relevant and not excluded under another rule of evidence.

 Appellants contend that Dr. Silberman's declaration was admissible under the "res gestae" exception. More specifically, they argue that it was admissible as an excited utterance or a present sense impression. An excited utterance is a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence. *Allen v. Mack,* 345 Pa. 407, 410, 28 A.2d 783, 784 (1942). When Dr. Silberman, an ear, nose and throat specialist, examined a patient who was complaining of a sore throat and difficulty in breathing, it cannot be said that his discovery of a throat abnormality was a shocking occurrence causing the specialist to be overcome with emotion. See: *Reichman v. Wallach,* 306 Pa.Super. 177, 194, 452 A.2d 501, 510 (1982) ("In view of the fact that the declarant was a physician and the supervisor of the hospital recovery room, one searches in vain for the ingredients of an 'excited utterance.' "). Dr. Silberman's declaration in this case simply was not an excited utterance.

Similarly, Dr. Silberman's extrajudicial declaration was not admissible as a present sense impression.

> Under this exception the necessity for the presence of a startling occurrence or accident to serve as a source of reliability is not required. The truthfulness of the utterance is dependent upon its spontaneity. It must be certain from the circumstances that the utterance is a reflex product of immediate sensual impressions, unaided

by retrospective mental processes. Restated, the utterance must be "instinctive, rather than deliberate."

*Commonwealth v. Farquharson,* 467 Pa. 50, 68, 354 A.2d 545, 554 (1976), citing *Commonwealth v. Coleman,* 458 Pa. 112, 117, 326 A.2d 387, 389 (1974). See also: McCormick on Evidence, § 298 (3d ed.1984). Here, the evidence failed to establish that the declaration of Dr. Silberman, a throat specialist, was "instinctive, rather than deliberative—in short, the reflex product of immediate sensual impressions, unaided by retrospective mental action." *Commonwealth v. Coleman, supra.* Sec: *Reichman v. Wallach, supra* 306 Pa.Super. at 194–195, 452 A.2d at 510. It was, rather, an expression of opinion based on medical training and experience.

▇ To permit a physician's extrajudicial statement of medical opinion, made upon examination of a patient, to be received in evidence as an excited utterance or under the present sense impression exception to the hearsay rule would run afoul not only of the hearsay exclusion but also of the rule which holds that expressions of medical opinion are generally inadmissible unless the physician expressing the opinion is available for cross-examination. See: *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975). In *Ganster v. Western Pennsylvania Water Co.,* 349 Pa. Super. 561, 504 A.2d 186 (1985), the Superior Court said, in holding that the business records exception to the hearsay rule did not encompass opinion testimony:

"Cross-examination," it has been said, "is a vital and fundamental part of a fair trial." *Commonwealth v. Shirey,* 333 Pa.Super. 85, 151, 481 A.2d 1314, 1350 (1984). Although the right of cross-examination is not absolute and although hearsay evidence may be received upon proof of exceptional circumstances, including factual evidence received under the business records in evidence exception (*Commonwealth v. Scatena,* 332 Pa.Super. 415, 438, 481 A.2d 855, 867 (1984) [*rev'd,* 508 Pa. 512, 498 A.2d 1314 (1985) ] ), cross-examination is particularly important

where it is the only means for testing the reliability of an opinion regarding disputed facts.

*Id.* 349 Pa.Super. at 573, 504 A.2d at 192.

 Finally, we reject plaintiffs' contention that defendants waived the right to argue this issue post-trial. Defendants objected and moved for a mistrial when Jose Lira testified to Dr. Silberman's exclamation. The objection and mistrial were overruled. They objected again and moved for a mistrial when plaintiff's counsel referred to the evidence during closing argument to the jury. Thus, they objected and moved for a mistrial on every occasion when the improper declaration by Dr. Silberman was mentioned in the presence of the jury. The trial court, although giving a cautionary instruction on the occasion of the second objection, realized that it had given conflicting signals on this issue and that the jury had heard incompetent and prejudicial evidence. Because this incompetent evidence may have influenced the jury's decision, the court determined that a new trial was necessary. We find neither error of law nor abuse of discretion in the trial court's decision.

Affirmed.