**Export Boxing & Crating Inc. v. Tech Met**

C.P. of Allegheny County, no. GD98-11345 and 1696 WDA 2002.

*Rolf L. Patberg,* for plaintiffs.
*Paul J. Walsh III,* for defendants.

BALDWIN, *J.,* March 6, 2003—

## SUPPLEMENT TO OPINION

By this supplement to opinion, the court recognizes the decision of the Superior Court of Pennsylvania, *Trach v. Fellin,* no. 1921 EDA 2000; 1949 EDA 2000; 2003 WL 282804 (Pa. Super. February 11, 2003) (en banc) (plurality opinion), which was filed one day prior to the date this court filed its opinion in the above-captioned

case. In *Trach,* the Superior Court re-evaluated the circumstances for application of the *Frye* test. The *Trach* opinion does not alter this court's determination that the testimony of Ralph J. Bartlett was admissible. However, this court ruled that Mr. Bartlett's testimony was admissible because he was sufficiently qualified as an expert witness and because under *Frye,* his methodology was sufficiently reliable to submit to the jury. As per the *Trach* opinion, a question arises as to whether Mr. Bartlett's testimony is subject to the *Frye* test at all, because the court in *Trach* held that scientific evidence is not subject to the *Frye* test unless it may be considered novel. *Trach,* 2003 WL 282804 at *5. As this court held that Mr. Bartlett followed a sufficient number of the guidelines set forth in NFPA, a scientific methodology not challenged by appellants, in his determination of cause and origin to render his methodology (and thus his testimony) reliable, the court now also holds, in light of the *Trach* opinion, that Mr. Bartlett followed a sufficient number of the guidelines set forth in NFPA and therefore, his methodology was not novel because his methods were in sufficient conformance with a tried and true method of cause and origin determination. Thus, Mr. Bartlett's testimony was not subject to the *Frye* test.

---

MEMORANDUM OPINION (FEBRUARY 12, 2003)
AMENDED TO DESIGNATE AS AN OPINION
(MARCH 3, 2003)

## INTRODUCTION

The following plaintiffs in the above-captioned matter have appealed this court's October 2, 2001 order,

denying their post-trial motion: Export Boxing & Crating Inc.; Paul Beisler; PPG Vending Company; Paul's Auto Service; Edward McGavitt; Tonomo Marine Inc.; Robert Ruffing and Ralph Greco (appellants).

This consolidated action involved more than 20 lawsuits and concerns a fire which occurred at the Glassport Industrial Center on January 31, 1997. Approximately 50 claimants were involved in this litigation, including those with property stored in the industrial center, the tenants of the center and the numerous fire companies that responded to the blaze. The appellants are property owners and tenants. The defendants in this case are Southwestern Pennsylvania Economic Development District Inc. (SPEDD), the owner of the building in which the fire occurred and Tech Met, a chemical milling business and one of the tenants in the building. The fire began in Tech Met's leased space and then spread to and destroyed the leased spaces of the other tenants. SPEDD and Tech Met also filed claims against one another.

The trial of this matter was bifurcated by the Honorable R. Stanton Wettick Jr. First, the liability phase of the case was tried by jury before the undersigned beginning on March 8, 2001 and ending on March 23, 2001. Thereafter, the parties were to contact Judge Wettick to schedule a conference for disposition of the damage issues.[1] See memorandum and order of court dated January 30, 2001, per Wettick, J. The October 2, 2001 order, which is the subject of this appeal, concerns the trial of the liability phase of the case.

The primary issue at trial was the alleged negligence of Tech Met and SPEDD. The jury was asked to deter-

---

1. The parties settled the remaining damage claims before they reached trial.

mine whether the acts or omissions of SPEDD caused the fire or spread of the fire in connection with SPEDD's ownership and maintenance of the building, including its failure to install or maintain a fire suppression system. As for Tech Met, the jury was requested to determine its responsibility for the cause or spread of the fire in connection with Tech Met's maintenance of its premises, including its failure to install or maintain a fire suppression system and its alleged improper chemical storage. The plaintiff firefighters also pursued claims of strict liability and claims under the Hazardous Material Emergency Planning and Response Act, 35 Pa.C.S. §6022.101 et seq. Prior to the trial of the liability phase, SPEDD settled all of plaintiffs' claims against it except the claims of Tech Met. SPEDD settled the claims of Tech Met during the presentation of the plaintiffs' case in chief.

After the presentation of evidence at trial, the jury was charged to determine the question and, if necessary, the percent of SPEDD's and Tech Met's liability. Although the jury found the conduct of SPEDD and Tech Met to be negligent and a substantial factor in causing the damages incurred by the plaintiff fire departments, the jury found that only the negligence of SPEDD was a substantial factor in causing damages to the tenants and the property owners. The jury found Tech Met to be 30 percent liable and SPEDD to be 70 percent liable. The interrogatories provided to the jury and the jury's answers thereto read as follows:

"And now, to wit, March 23, the jury empanelled in the above-captioned case finds the following answers to the interrogatories set forth below:

"(1) Was the defendant Tech Met negligent?

"Yes x No__

"If you answer Yes, go to questions 2, 3, 4 and 5; if No, go to question 6.

"(2) Was the defendant Tech Met's negligence a substantial factor in bringing about the harm to the plaintiff tenants at the SPEDD facility?

"Yes ___ No x

"Go to question 3.

"(3) Was the defendant Tech Met's negligence a substantial factor in bringing about the harm to the plaintiffs who stored property at the SPEDD facility?

"Yes ___ No x

"Go to question 4.

"(4) Was the defendant Tech Met's negligence a substantial factor in bringing about the harm to the fire companies' equipment?

"Yes x No ___

"Go to question 5.

"(5) Was the defendant Tech Met's negligence a substantial factor in bringing about the harm to SPEDD's facility?

"Yes ___ No x

"If any of the questions numbered 2 through 5 are answered No, that party cannot recover against Tech Met. Go to question 6.

"(6) Was the defendant SPEDD negligent?

"Yes x No___

"If Yes, go to questions 7, 8, 9, and 10; if No, go to question 12 if you found Tech Met's negligence a substantial factor as to any plaintiff.

"(7) Was the defendant SPEDD's negligence a substantial factor in bringing about the harm to the plaintiff tenants at the SPEDD facility?

"Yes x  No __

"Go to question 8.

"(8) Was the defendant SPEDD's negligence a substantial factor in bringing about the harm to the plaintiffs who stored property at the SPEDD facility?

"Yes x No __

"Go to question 9.

"(9) Was the defendant SPEDD's negligence a substantial factor in bringing about the harm to the fire companies' equipment?

"Yes x No __

"Go to question 10. Answer question 11 if you found SPEDD's and Tech Met's negligence a substantial factor as to any plaintiff.

"(10) Was the defendant SPEDD's negligence a substantial factor in bringing about the harm to Tech Met's premises?

"Yes __ No x

"If any of the questions numbered 7 through 10 are answered No, that party cannot recover against SPEDD. Answer question 11 if you found SPEDD's and Tech Met's negligence a substantial factor as to any plaintiff.

"(11) If both Tech Met and SPEDD's negligence were substantial factors, divide the percentage of negligence of each. It must add up to 100 percent.

"Tech Met   30 %

"SPEDD     70 %
          ——————
          100 %

"If you answered question 11, answer questions 12 and 13.

"(12) Do you find that Tech Met's conduct was outrageous (malicious, wanton, reckless, willful or oppressive)?

"Yes __ No x

"(13) Do you find that SPEDD's conduct was outrageous (malicious, wanton, reckless, willful or oppressive)?

"Yes __ No x"

Post-trial motions were filed by the parties. On October 2, 2001, the court issued the following order:

"And now, to wit, October 2, 2001, having carefully reconsidered all of the post-trial motions previously raised by the respective parties herein, and argued before the undersigned in the above-captioned case, it is hereby ordered, adjudged, and decreed that:

"(1) The post-trial motions for relief filed by the defendant Tech Met against the certain identified plaintiffs herein for, inter alia, a judgment notwithstanding the verdict are denied, with the sole exception that Tech Met's post-trial motion for alternative relief is sustained in part, only to the extent that the independent grounds raised therein have been stated with sufficient specificity, and have been otherwise properly preserved for appeal under Rule 227.1.

"(2) The post-trial motions for relief filed by the plaintiffs identified herein as either the property owners or the tenants who stored property at the site of the fire, and against the defendant Tech Met are denied.

"(3) The post-trial motions for relief filed by the plaintiff volunteer fire companies and the Borough of Glassport against the defendant Tech Met, including, but

not limited to, their motions to remove nonsuit judgments, their motions for directed verdicts, under the concept of strict liability, and/or the requisites of the Hazardous Material Emergency Planning and Response Act are denied.

"(4) The post-trial motions for relief filed by the plaintiff volunteer fire companies and the Borough of Glassport against the defendant Tech Met to enter judgments in their favor notwithstanding the verdict, and/or to mold the jury's verdict are denied.

"(5) Finally, all of the post-trial motions for relief filed by the plaintiff Metaline Machine Inc., are denied.

"By the court:

"/s/Judge Cynthia A. Baldwin"

On October 25, 2001, the fire companies filed a motion to amend the October 2, 2001 order or to certify the order pursuant to Pa.R.A.P. 341(c)(1). This motion was denied by order dated November 1, 2001. On November 28, 2001, the fire companies filed an appeal of the November 1, 2001 order, entitled "petition for review" at 1932 WDA 2001. Tech Met filed a motion to quash the petition for review in the Superior Court, which motion was granted by order dated December 13, 2001 because the damages phase of the trial had not been completed. Trial of the remaining damages phase of the case was scheduled on the November 2002 trial list by order of court dated May 8, 2002, per Wettick, J.

In August of 2002, counsel for the tenants and property owners requested by motion, an order of court declaring the order of March 23, 2001 [sic], denying post-trial motions to be determined a final order because "[a]s of August 16, 2002, each party that had filed suit against defendants in the above-captioned matter has

settled their claim and the matter has reached conclusion at the trial court level." This motion was granted by order dated September 6, 2002. Appellants filed their appeal from the October 2, 2001 order on September 12, 2002.

## ISSUES

As set forth in their concise statement of matters complained of on appeal, appellants make the following five claims of error with respect to the court's October 2, 2001 order:

"(a) Whether judgment should be entered in favor of the plaintiffs based upon the weight of the evidence;

"(b) Whether the plaintiffs were entitled to a new trial because of the improper introduction of the expert opinion and qualifications of Ralph Bartlett;

"(c) Whether the plaintiffs were entitled to a new trial because the jury was instructed as to defendant SPEDD, who was no longer a party to the case;

"(d) Whether the plaintiffs were entitled to a new trial for the failure to admit a prior consistent statement for the purposes of rehabilitating Thomas Hitchings; and

"(e) Whether the plaintiffs were entitled to a new trial because only a portion of the regulations/articles were submitted to a jury and only the portions that were favorable to defendant Tech Met were submitted."

## DISCUSSION

### A. *Appellants' Motion for Judgment N.O.V. and for a New Trial Based on the Weight of the Evidence*

Appellants argue that they were entitled to a judgment n.o.v. and/or a new trial because there can be no dispute

that Tech Met was responsible for having a fire suppression system and the evidence was uncontroverted that, if such a system had been operational, the fire would not have spread to other tenancies.

A judgment n.o.v. is proper in either of the following circumstances: "[O]ne, the movant is entitled to judgment as a matter of law . . . and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." *Hart v. O'Malley,* 781 A.2d 1211, 1217 (Pa. Super. 2001). (citations omitted) In the first circumstance, the court evaluates the record and "concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Id.* (citations omitted) As regarding a motion for a new trial, "[t]rial courts have broad discretion to grant or deny new trials." *Id.* at 1219. (citations omitted) "First, the trial court must decide whether one or more mistakes occurred at trial. Second, if the trial court determines that a mistake occurred, it must determine whether the mistake was [a] sufficient basis for granting a new trial." *Id.*

In support of their argument that Tech Met was responsible for having a fire suppression system, appellants refer to sections F-109.2.1 and 904.5 of the Building Officials and Code Administration National Building Code (1990) (BOCA Code), which was in effect at the time of the fire in 1997, as per the evidence at trial:

*"Section F-109.0 Unsafe conditions . . .*

*"F-109.2.1 Occupant responsibility:* If an occupant of a building creates conditions in violation of this code,

by virtue of storage, handling and use of substances, materials, devices and appliances, the occupant shall be held responsible for the abatement of said hazardous conditions. . . .

"*Fire Protection Systems*

"*Section 901.0 General* . . .

"*904.5 Use Group H:* An automatic fire suppression system shall be provided throughout all Use Group H fire areas. An automatic fire supression system shall not be required for magazines used for storage of Use Group H-1 materials and which are constructed and located in accordance with NFPA-495 and the fire prevention code listed in chapter 35."[2]

Also relevant to the issues raised by appellants are the following BOCA sections:

"*F-109.2 Maintenance:* The *owner* shall be responsible for the safe and proper maintenance of the building, structure, premises or lot at all times. In all new and existing buildings and structures, the fire protection equipment, *means of egress,* fire protective signaling systems, *automatic fire detection systems,* and safeguards required by the code and other jurisdictional ordinances shall be maintained in a safe and proper operating condition. . . .

"*F-501.1.* All fire protection systems, devices, units, and service equipment which were installed in compliance with any law, ordinance, or order shall be maintained in an operative condition at all times. It shall be

_____

2. Evidence was presented that Tech Met might be a "Hazardous production material" (HPM) facility under the BOCA Code rather than a "Use Group H" facility but there was evidence that both kinds of facilities required fire suppression systems.

unlawful for any owner or occupant to reduce the effectiveness of the protection so required. . . ."

Appellants' argument that the BOCA Code mandates judgment in their favor and/or a new trial fails for several reasons. First to the extent appellants are arguing that Tech Met's purported violation of any of the above provisions is negligence per se, this argument fails because, while a violation of the code sections or regulations provided to the jury may be evidence of negligence, it is not negligence per se.[3] Moreover, appellants failed to point to any place in the record where they preserved this claim of error. See *Cipriani v. Sun Pipe Line Co.,* 393 Pa. Super. 471, 481, 574 A.2d 706, 711 (1990) ("unless a specific exception has been taken to an alleged error in the trial court's instructions, the alleged error will be deemed waived and will not be considered by the reviewing court").

Second, the code language at issue did not require Tech Met to install or maintain a fire suppression system. The meaning of statutory terms are questions of law within the province of the judge. See *Pettineo v. City of Philadelphia Law Department—Claims Division,* 721 A.2d 65, 67 (Pa. Commw. 1998). Appellants argue that Tech Met, a tenant in SPEDD's building, "created a condition in violation of the code" by failing to have a sprinkler system and a fire detection system. See concise state-

---

3. Compare Judge Wettick's holding in this case in his opinion addressing preliminary motions of Tech Met and SPEDD, that "failure to comply with OSHA regulations is not negligence per se" and citing *Wood v. Smith,* 343 Pa. Super. 547, 551, 495 A.2d 601, 603 (1985); *Brogley v. Chambersburg Engineering Co.,* 306 Pa. Super. 316, 320, 452 A.2d 743, 745-46 (1982). See *Export Boxing & Crating Inc. v. Tech Met,* 147 P.L.J. 377 (C.P. Allegheny 1999).

ment of matters at ¶41. The only language which appears to address the specific responsibilities of Tech Met as an occupant of the building (and not an owner of the building) is F-109.2.1, which addresses situations in which the occupant of the building "creates conditions in violation of this code, by virtue of storage, handling and use of substances, materials, devices and appliances." If so, the occupant is responsible for "the abatement" of the hazardous conditions. See section F-109.2.1 of the BOCA Code, *supra*. The language which refers to a "condition" created by Tech Met specifically concerns storage, handling and use issues and not the installation or maintenance of a fire suppression or detection system. The rules of statutory construction mandate that the clear meaning of a statute be given effect. See 1 Pa.C.S. §1921. Although section F-109.2.1 of the BOCA Code required Tech Met to abate certain conditions created by its business, this section of the BOCA Code clearly does not mandate that Tech Met install or maintain a fire suppression or detection system.

Moreover, appellants' argument that "there can be no other cause for the spread of the fire, other than the lack of a sprinkler system and detection system at Tech Met" is not consistent with the evidence presented at trial. Appellants' experts admitted that the cause of the fire was undetermined. The jury was provided with evidence that the fire may have started by electrical sources and spread in the roof area of Tech Met's tenancy and that SPEDD was responsible for the roof area of the building. In fact, section F-109.2 of the BOCA Code, *supra,* appears to designate to the owner of the building, SPEDD in this case, responsibility for maintenance of the building and compliance with the safegaurds of the code.

Evidence was presented that a lease agreement between Tech Met and SPEDD designated SPEDD responsible for the roof area of the facility and not Tech Met. Evidence was presented that SPEDD allowed flammable dust to accumulate in the roof area and that SPEDD installed a metal roof over a wood and tarpaper roof, which caused the fire to expand and spread. Evidence was presented that SPEDD should have had firewalls installed between the tenancies of its building. Evidence was presented that SPEDD dismantled the existing sprinkler system against the order of the fire official of Glassport. Section F-501.1 of the BOCA Code, *supra,* prevents an owner or an occupant from reducing the effectiveness of a fire protection system. Accordingly, the jury's determination that while Tech Met was negligent, Tech Met's negligence was not a substantial factor in bringing about harm to the plaintiff tenants and owners at the SPEDD facility, and thus, does not entitle appellants to a judgment n.o.v. or to a new trial.

## B. *Motion for New Trial Regarding the Qualification of Ralph Bartlett as an Expert*

Appellants argue that the testimony of Ralph J. Bartlett should have been precluded because he was not qualified as an expert in the area of forensic fire analysis on the cause and origin of fires and because he was not qualified as an expert on health, safety and building codes. Appellants also argue that Mr. Bartlett's testimony as to the area of origin of the fire should have been precluded for failure to meet *Frye*[4] standards. Finally, ap-

---

4. *Frye v. United States,* 293 F. 1013 (D.C. Cir. 1923).

pellants argue that the court erred in allowing counsel for Tech Met an extended opportunity to engage in voir dire of Mr. Bartlett before ruling on whether Mr. Bartlett was an expert on code analysis and cause and origin.

Appellants' last argument will be addressed first because it may be addressed cursorily by stating only that the court has discretion in handling the examination of witnesses and its discretion was not abused by allowing extensive voir dire of Mr. Bartlett. See *Williams v. SEPTA,* 741 A.2d 848, 854 (Pa. Commw. 1999) ("The scope of voir dire rests in the sound discretion of the trial court, whose decision will not be reversed on appeal absent palpable error.").

Turning to the law governing appellants' other arguments, Pennsylvania law provides that a qualified expert witness may testify at trial as to matters which are clearly beyond the realm of knowledge of the average layperson. *Blum v. Merrell Dow Pharmaceuticals Inc.,* 705 A.2d 1314, 1316 (Pa. Super. 1997), *affirmed,* 564 Pa. 3, 764 A.2d 1 (2000). Pennsylvania courts apply a liberal standard in qualifying an expert witness. *Joyce v. Boulevard Physical Therapy & Rehabilitation Center P.C.,* 694 A.2d 648, 654-55 (Pa. Super. 1997). To qualify as an expert witness, the witness must possess the requisite skill, training, education or other reasonable pretension to specialized knowledge on the subject under investigation. *Lira v. Albert Einstein Medical Center,* 384 Pa. Super. 503, 509, 559 A.2d 550, 552-53 (1989).

At trial, Mr. Bartlett was qualified as an expert in fire protection safety, code analysis and cause and origin. (TT at 1376, 1387.) Mr. Bartlett testified that he worked as a fire protection engineer and that he obtained a Bachelor

of Science in this profession from the University of Maryland. (TT at 1344.) Mr. Bartlett testified that he attended three courses on fire cause and origin offered by the Investigative Engineering Association. (TT at 1345, 1360.) Mr. Bartlett testified that he has his own business, 90 percent of which concerns fire code compliance and 10 percent of which concerns cause and origin and fire reconstruction work. (TT at 1349.)

In his profession, Mr. Bartlett testified that he applies various engineering disciplines as they relate to fire safety. (TT at 1345-46.) Mr. Bartlett testified that he works with design standards of fire suppression systems, fire test data and heat releases, fire reconstruction, fire behavior and the determination of probable cause, area of origin and reinstatement. (TT at 1345-46.) Mr. Bartlett testified that he personally investigated well over 100 cause and origin cases and oversaw hundreds of other investigations. (TT at 1346, 1368, 1385.) Mr. Bartlett testified that he was familiar with the NFPA (National Fire Protection Association) chapters 920 and 921 concerning cause and origin determination and generally followed these guidelines in his investigation of the fire. (TT at 1353, 1367-68, 1411-12, 1430.) Mr. Bartlett also testified that he used the BOCA Code in his investigations. (TT at 1377.) Although much of Mr. Bartlett's experience in fire investigations occurred in Canada, Mr. Bartlett testified that he applies the same investigative standards in the Canadian cases as in the United States. (TT at 1377.) Accordingly, Mr. Bartlett certainly had the requisite skill, training and knowledge to be qualified as an expert in fire protection safety, code analysis and cause and origin in this case.

62

It is well established under Pennsylvania law that trial courts must apply the *Frye* rule in evaluating the admissibility of expert scientific testimony. *Blum v. Merrell Dow Pharmaceuticals Inc.*, 564 Pa. 3, 764 A.2d 1 (2000) (discussing the court's adoption of the rule which was set forth in *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923)). When attorneys raise a challenge to "scientific, technical or other specialized" expert testimony under the *Frye* test, trial courts must act as gatekeepers of the evidence by evaluating the reliability of the testimony. *Grady v. Frito-Lay Inc.*, 789 A.2d 735 (Pa. Super. 2001) (plurality opinion), *appeal granted*, 569 Pa. 46, 800 A.2d 294 (2002). The *Frye* test makes the admission of expert scientific testimony dependant "upon the *general* acceptance of its validity by those scientists active in the field to which the evidence belongs." *Commonwealth v. Topa*, 471 Pa. 223, 231, 369 A.2d 1277, 1281 (1977). (emphasis in original)

As stated by the court in *Frye v. United States*, "While courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, *the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs*." *Topa*, 471 Pa. at 231, 369 A.2d at 1281 (quoting *Frye v. United States*, 293 F. 1013, 1014 (1923)). (emphasis in original) Our courts require scientific principles upon which conclusions are made to have reached general acceptance in the scientific community so that "those most qualified to asses the general validity of a scientific method will have the determinative voice." *Topa*, 471 Pa. at 232, 369 A.2d at 1282. (citation omitted) "Admissibility requires both the casual relationship *and* the

methodology to be generally accepted by the scientific community." *Thomas v. West Bend Company Inc.*, 760 A.2d 1174, 1179 (Pa. Super. 2000). (emphasis in original)

Mr. Bartlett testified that his opinion on cause and origin in this case was formulated after investigating the fire by reference to the standards set forth in chapter 921 of NFPA. (TT at 1368, 1411-12, 1430.) Mr. Bartlett testified within the standard degree of scientific certainty that he believed the area of origin of the fire to be up in the roof space of the Tech Met facility. (TT at 1430.) Mr. Bartlett was not able to make a determination as to the cause of the fire. (TT at 1431.) Appellants agree that the standards of NFPA were the appropriate standards to use in evaluating the cause and origin of the fire. Thus appellants do not appear to be arguing that the methodology described in NFPA is unsound or that proper application of NFPA allows an expert to make an expert opinion on cause and origin. Instead, appellants appear to argue that because Mr. Bartlett did not follow all of or a sufficient number of the guidelines set forth in NFPA for determination of cause and origin, that Mr. Bartlett's methodology fails to be sufficiently reliable to comport with *Frye*.

Appellants argue that Mr. Bartlett failed to follow certain sections of NFPA because, at least in part, Mr. Bartlett did not visit the fire site until over two years after the fire occurred and after the site had been substantially cleaned up. (TT at 1368, 1502; plaintiffs' exhibit 140.) Appellants specifically state that Mr. Bartlett failed to comply with the following sections of NFPA: 11-1(c), regarding the analysis of the physics and chemistry of

the fire initiation development and growth; 11-2.3, regarding vector diagramming; 11-2.4, regarding a depth-of-char survey; 11-5.3, regarding the condition of doors and window; 11-5.4, regarding explosion evidence; 11-6, regarding detailed interior surface examination; 11-7, regarding fire scene reconstruction; 11-8, regarding fire spread scenario. (TT at 1502; plaintiffs' exhibit 140.)

Mr. Bartlett did review as much physical evidence as was available regarding the fire, including the floor of the facility, a wall with burn patterns and a section of the roof. (TT at 1414-15, 1424-25, 1427-29.) In addition to viewing the site, Mr. Bartlett's opinion was based on his review of "hundreds of photographs, pretrial statements, reports from other experts" as well as depositions from firefighters, SPEDD employees, Tech Met employees and eyewitness accounts. (TT at 1380, 1388-89, 1413, 1415, 1420, 1423-24, 1429.)

The court notes that the discussion following section 11-1 of NFPA states, "[i]n some instances, a single item, such as an irrefutable article of physical evidence or dependable eyewitness to the initiation, can be the basis for a conclusive determination of origin. In most cases, however, no single item is sufficient in itself. The investigator then should use all of the available resources in developing potential scenarios and determining which scenarios plausibly fit all of the evidence available." See plaintiffs' exhibit 140. Appellants did not provide any evidence that an investigator was required to view a fire site immediately after a fire to render an admissible opinion on the subject. Appellants also did not provide evidence that the guidelines in each and every NFPA section have to be followed before an opinion could be rendered on the cause and origin of a fire.

The court is not prepared to state that Mr. Bartlett's testimony was unreliable because he did not follow every guideline set forth in NFPA. It makes sense that some of the guidelines could not be followed in all circumstances. Compare *Commonwealth v. United States Mineral Products Co.,* 809 A.2d 1000 (Pa. Commw. 2002) (in which the court concluded that the expert's procedures "were in sufficient compliance with generally accepted scientific methodology to be admissible under *Frye.* Deficiencies in his methodology go to the weight to be accorded his testimony at trial."). In this case, Mr. Bartlett's compliance with NFPA was sufficient to render his methodology reliable.

Moreover, appellants were provided ample opportunity to cross-examine Mr. Bartlett and they did so. For example, counsel for plaintiff firefighters emphasized the gap of time between the fire and Mr. Bartlett's examination and highlighted that the Tech Met facility was cleaned up by the time Mr. Bartlett viewed it. (TT at 1432.) Mr. Bartlett agreed on cross-examination that it was generally better to do a cause and origin investigation relatively quickly after a fire occurs. (TT at 1434.) Additionally, Mr. Bartlett admitted that he formulated his opinion based on all the evidence, although it was clear at trial that some of the evidence which Mr. Bartlett considered was controverted. (TT at 1430.)[5] However,

---

5. For example, in their cross-examination, appellants questioned Mr. Bartlett as to how he could be sure that a burn pattern he evaluated was caused by the fire in question or a previous fire at Tech Met and Mr. Bartlett testified that he could not be sure the burn pattern was caused by the fire in question. (TT at 1441.) However, the court notes that there was previous testimony during the trial that the earlier fire at Tech Met was contained and would not have spread to the walls of the Tech Met facility.

Mr. Bartlett clearly testified that his decision was based on all of the materials he viewed and that his opinion was based on the consistency of this substantial amount of evidence. (TT at 1430.)

Accordingly, because the court determined that Mr. Bartlett was familiar with the guidelines of NFPA and sufficiently followed these guidelines to render his methodology reliable, the court did not err in permitting the jury to consider the expert opinion of Mr. Bartlett.

### C. *Motion for a New Trial Because the Jury Was Instructed to Deliberate on the Liability of SPEDD*

Appellants argue that the court erred in submitting the issue of SPEDD's liability to the jury because Tech Met "freely, knowingly and intentionally entered into a settlement agreement against SPEDD, thereby forfeiting any joint tort-feasor rights that Tech Met had under the circumstances." See appellants' concise statement at ¶72. Although it is true that SPEDD and Tech Met had claims against one another which were settled during the trial of the liability phase of this matter, the right of Tech Met to retain SPEDD in this case is due to the relationship between SPEDD and Tech Met as co-defendants with respect to the plaintiffs in this case and not due to the claims that existed between SPEDD and Tech Met.

Prior to trial, SPEDD and plaintiffs entered into a pro-rata joint tort-feasor agreement. See *Export Boxing & Crating Inc. v. Tech Met,* 56 D.&C.4th 393 (Allegheny Cty. 2001) (Wettick, J). Pennsylvania law is clear that defendants have the right to require co-defendants who enter into a pro-rata settlement release agreement prior to trial to remain in a case through trial and verdict to

establish the joint tort-feasor status of the defendants. *National Liberty Life Insurance Co. v. Kling Partnership,* 350 Pa. Super. 524, 532, 504 A.2d 1273, 1277 (1986); *Claudio v. Dean Machine Co.,* 786 A.2d 224, 233 (Pa. Super. 2001), *appeal granted on other grounds,* 567 Pa. 613, 790 A.2d 281 (2002). This is to allow the non-settling defendant who is found to be a joint tort-feasor with a settling defendant to set off the pro-rata liability of the settling defendant from the total liability awarded. *Id.* There was no evidence presented that the agreement between Tech Met and SPEDD or the agreement between SPEDD and the plaintiffs affected Tech Met's right to have the liability of SPEDD submitted to the jury. The jury determined that Tech Met and SPEDD were jointly and severally liable with respect to plaintiff firefighters but that only SPEDD was liable to appellants. The appellants should have understood the risk they were taking when they entered into a settlement agreement with only one of the two alleged joint tort-feasors, *i.e.,* that the jury might find only the settling defendant, in this case SPEDD, liable with respect to some or all of the plaintiffs.

Appellants also make the following statement in claiming that they are entitled to a new trial: "A continual reference to SPEDD and having SPEDD as both a plaintiff and defendant confused the jury." See plaintiffs' concise statement at ¶73. The court finds this unsupported assertion without merit. SPEDD was obviously entitled to pursue its claims against Tech Met up and until the time it settled its case, which happened to be well into the plaintiffs' case in chief. Moreover, as discussed above, Tech Met was entitled to retain SPEDD in the lawsuit as

a co-defendant in light of SPEDD's execution of a pro-rata joint tort-feasor release agreement. The court fails to see how appellants were prejudiced by this dynamic which is common in complex litigation. Accordingly, the court did not err in submitting the issue of SPEDD's liability to the jury.

Finally, appellants argue that it was error for the court to deny their request for a jury instruction that there was no evidence that appellants' actions in any way contributed to the start or spread of the fire. The appellants appear to base this argument on testimony by Mr. Bartlett that if Tech Met as a tenant were responsible for a fire suppression system, then all of the tenants of the SPEDD complex would have been responsible for such a system. (TT at 1486, 1496.) Appellants did not object to this testimony at trial. Moreover, appellants' claim of error on this point is otherwise without merit because it was Mr. Bartlett's testimony that SPEDD was responsible for a fire suppression system and not Tech Met or any other tenants. (TT at 1483-86, 1496.) The jury was *not* instructed to consider whether appellants' actions contributed to the start or spread of the fire. Appellants were not entitled to an instruction that appellants were *not* negligent.

### D. *Motion for a New Trial Because the Prior Consistent Statements of Mr. Thomas Hitchings Were Not Permitted into Evidence*

Appellants next argue that they are entitled to a new trial because the court sustained a hearsay objection to an out-of-court statement made by Thomas Hitchings, chief deputy fire marshal with the Allegheny County

Bureau of Emergency Services. Counsel for the plaintiff firefighters called Chief Hitchings, a cause and origin investigator, as an expert witness at trial to testify regarding his opinion that the fire started in the Tech Met portion of the SPEDD facility. After Chief Hitchings left the stand, appellants proposed to read into evidence the deposition testimony of Mr. Max Leake, an employee of SPEDD. At his deposition, Mr. Leake testified that several days after the fire, he accompanied Chief Hitchings to the scene of the fire and took photographs of the scene while Chief Hitchings conducted his investigation as to the origin of the fire. Mr. Leake apparently also testified that, during the investigation, Chief Hitchings pointed to a wall in Tech Met's storage facility and stated the following to Mr. Leake: "This is where the fire started." (TT at 1178.)

Tech Met objected to the above testimony on the ground of hearsay. Appellants argued that the above statement is not hearsay and even if it is, it should have been admitted for purposes of rehabilitation as a prior consistent statement or under the exception known as the present sense impression. (TT at 1177-91.) Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E. 801.[6] Clearly statements made by Mr. Hitchings to another witness prior to trial are hearsay. Therefore,

---

6. Appellants may have conceded this fact at trial by making the following statement regarding Max Leake's deposition testimony: "I would . . . assert there would be a hearsay problem with that, your honor, which I would conceive [sic] on the record." (TT at 1182.)

this evidence was properly excluded unless appellants offered a valid exception to the hearsay rule.

Appellants argue that the statement was admissible as a prior consistent statement. Prior consistent statements are admissible to rebut an allegation of corrupt motive or recent fabrication by the witness. *Commonwealth v. Koehler,* 558 Pa. 339, 737 A.2d 225, 241 (1999). Appellants argue, without pointing to any testimony in the record, that the attorney for Tech Met in cross-examining Mr. Hitchings "called his credibility into question." See concise statement at ¶89. The court does not agree. In his cross-examination, counsel for Tech Met simply pointed out by questioning Mr. Hitchings that the fire's "point of origin and heat of ignition" were undetermined and that although it was Mr. Hitchings' opinion that the "area of origin" was in the storage area of Tech Met's facility, Mr. Hitchings was not testifying that the fire started on the ground floor of the storage room; rather, the fire could have started in the roof area of the space. (TT at 236-41.) Counsel for Tech Met did not imply that Chief Hitchings had a corrupt motive or recently fabricated his testimony. Thus, the court did not err in barring the admission of the statement in question based on the theory of the prior consistent statement.

Moreover, the court properly refused to allow into evidence Chief Hitchings' statement under the exception known as the present sense impression. A present sense impression is defined as follows: "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Pa.R.E. 803. Chief Hitchings was called by the plaintiff firefighters to testify as an

expert witness. The impromptu out-of-court statement of Mr. Hitchings regarding the very subject upon which he has provided his expert opinion is not the kind of statement which qualifies as a present sense impression. Present sense impressions qualify as an exception to the hearsay rule because they are "contemporaneous[ ] with the observation of the occurrence or condition." *Commonwealth v. Coleman,* 458 Pa. 112, 117, 326 A.2d 387, 389 (1974). It is the "immediacy of the declaration" that insures "little opportunity for reflection or calculated misstatement." *Id.* Present sense impressions are not deliberate or based on "retrospective mental action." *Lira,* 384 Pa. Super. at 513, 559 A.2d at 554.

In other words, the present sense impression may not be used to allow into evidence an expert's out-of-court impromptu expression of opinion. Although Chief Hitchings may have operated as a fact witness in addition to an expert witness, the statement in question goes to the very expert opinion which Chief Hitchings was hired to make. His opinion was not the "product of immediate sensual impressions." *Id.;* see also, *Coleman,* 458 Pa. at 120, 326 A.2d at 391 (recognizing that the present sense impression is not similar to an opinion rendered on the evidence presented at trial).

The decision of the Superior Court of Pennsylvania in *Lira v. Albert Einstein Medical Center, supra,* illustrates this point. In *Lira,* a medical malpractice action, the court considered the admissibility of the following out-of-court statement, which was made by a doctor after examining the patient-plaintiff. "Who butchered you?" The doctor was not a witness at trial. The plaintiff argued that the doctor's statement was a present sense impression and

should be admitted into evidence at trial. The court held that the plaintiff failed to establish that the doctor's statement was "instinctive, rather than deliberative." *Id.* at 512, 559 A.2d at 554. Rather, the court reasoned that the doctor's statement was an expression of opinion based on the doctor's medical training and experience. *Id.* at 512, 559 A.2d at 554. Likewise, Chief Hitchings' statement was hearsay and in the nature of an expert opinion and not a present sense impression. The plaintiffs could have questioned Chief Hitchings at trial regarding his initial opinion of the fire's point of origin and chose not to do so. Chief Hitchings was then dismissed as a witness. (TT at 247, 249.) It is not surprising that appellants decided not to question Chief Hitchings as to his change of opinion because it is difficult to imagine how the opinion change of Chief Hitchings from a belief that the fire started on the ground floor of the Tech Met facility to a belief that the fire started somewhere in that area of the Tech Met facility helps them. Thus, even if Chief Hitchings' opinion was a present sense impression, the decsion not to admit such testimony was harmless error. See *Walsh v. Kubiak,* 443 Pa. Super. 284, 295, 661 A.2d 416, 421 (1995) ("An erroneous ruling must also be harmful to the complaining party before reversal is required."). (citations omitted)

### E. *Motion for a New Trial Based on the Handling of a Jury Question*

Appellants argue that they are entitled to a new trial because the jury was provided a copy of an appendix to one of the regulations and was not provided a copy of the language of all of the regulations. The jury requested

a copy of appendix A of OSHA section 1910.119, which was an exhibit at trial. (TT at 1697.) At the same time, the jury asked the court to read the charges pertaining to the various regulations. (TT at 1697.) The court orally recharged the jury on the OSHA, BOCA and NFPA regulations and standards and provided the jury with a copy of appendix A. (TT at 1703-11.) Appendix A lists the identity and quantity of chemicals covered by OSHA section 1910.119. Prior to providing the jury with a copy of appendix A, the court read to the jury the purpose of OSHA section 1910.119. (TT at 1709-11.)

Appellants argue that they are entitled to a new trial because the court's response to the jury question unduly emphasized the particular OSHA regulation which referenced appendix A and somehow de-emphasized BOCA, NFPA and other OSHA regulations that were more favorable to the appellants. "In order to obtain a new trial based on the trial court's treatment of the jury's question, the moving party must demonstrate in what way the trial error caused an incorrect result." *Scarborough by Scarborough v. Lewis,* 359 Pa. Super. 57, 71, 518 A.2d 563, 570 (1986), *rev'd in part on other grounds,* 523 Pa. 30, 565 A.2d 122 (1989). A new trial is not warranted unless the moving party shows "at least a '*substantial possibility* of an incorrect result.' " *Id.* (quoting *Reilly v. Poach,* 227 Pa. Super. 522, 525 n.2, 323 A.2d 50, 52 n.2 (1974)). (emphasis in original)

It is difficult to imagine how the jury reached an incorrect result by receiving a copy of a listing of chemicals. The jury did not receive a copy of the language of the OSHA regulation that corresponded to appendix A or a copy of any other regulation on which they were

charged. The court simply orally recharged the jury on the language of all of these regulations. Thus, the jury was not prejudiced. Moreover, it would have been impractical for the court to read to the jury the numerous chemicals and the threshold quantity in pounds of each chemical which had to be present before the OSHA section was applicable. Well over 100 chemicals are listed in appendix A. Accordingly, the court did not err on this point.

### F. *Motion for a New Trial Based on Inconsistent Verdict*

Appellants argue that they are entitled to a new trial because they jury's verdict is inconsistent.[7] The jury determined that SPEDD was negligent in this action and that SPEDD's negligence was a substantial factor with regard to the damages of the firefighters and the property owners and tenants. The jury also determined that Tech Met was negligent in this action but that its negligence was only a substantial factor with regard to the damages of the firefighters and not the property owners and tenants. The jury was then instructed as follows: "If *both* Tech Met and SPEDD's negligence *were substantial factors,* divide the percentage of negligence of each. It must add up to 100 percent." (emphasis supplied) The jury then attributed 70 percent to SPEDD and 30 percent to Tech Met. Appellants argue that "no reasonable theory can be rendered as to why the firefighter plaintiffs recovered on a negligence theory and the defendant-prop-

---

7. This claim of error was not set forth in the issues section of appellants' concise statement of matters complained of on appeal but it is addressed in the body of that document.

erty owners/tenants could not recover. Alternatively, there is no reasonable theory to support a jury's verdict which concludes that Tech Met's negligence was not a substantial factor in the tenant/property owners' damages, yet attributes 30 percent of the negligence to Tech Met." See concise statement at ¶116.

A jury verdict is presumed to be consistent "unless there is no reasonable theory to support the jury's verdict." *McDermott v. Biddle,* 544 Pa. 21, 25, 674 A.2d 665, 667 (1996). The jury could have found Tech Met negligent with respect to the storage of its chemicals and, thus, responsible for the damages of the firefighters due to the release of those chemicals but that Tech Met's negligence did not cause or spread the fire which caused the damages of the property owners and tenants. Thus, the jury's decision that Tech Met's negligence was not a substantial factor in the damages suffered by the property owners and tenants is not inconsistent.

As for the jury's attribution of percent liability, the jury was instructed to attribute percent fault only to the extent Tech Met and SPEDD were both found negligent and only to the extent that the negligence of both was found to be a substantial factor in causing harm. Because the jury only made these findings with respect to the firefighters, the jury's apportionment of the liability only applies to the damages incurred by the firefighters. As for the damages incurred by the property owners and tenants, the jury determined that SPEDD was 100 percent liable by finding only SPEDD's negligence to be a substantial factor in causing the harm to these plaintiffs. Thus, the jury verdict was not inconsistent and appellants are not entitled to a new trial on this ground.

## CONCLUSION

Accordingly, appellants are not entitled to a judgment notwithstanding the verdict or a new trial on any of the grounds raised on appeal. Thus, the order of court of October 2, 2001, should be affirmed.