572 A.2d 12

**Carl H. PALMER and Margaret E. Palmer**

**v.**

**Abner S. LAPP and Rebecca S. Lapp t/d/b/a Abner Lapp's Coach Shop, Appellants.**

Superior Court of Pennsylvania.

Argued Dec. 14, 1989.

Filed March 22, 1990.

Neil L. Albert, Lancaster, for appellant.

Dean Piermonte, Lancaster, for appellee.

Before BROSKY, WIEAND and JOHNSON, JJ.

BROSKY, Judge.

Appellants Abner S. Lapp and Rebecca S. Lapp, t/d/b/a Abner Lapp's Coach Shop, appeal from the judgment of the trial court [1] following a $10,077.00 damages award in plaintiff-appellee Carl H. Palmer and Margaret E. Palmer's favor. This case was originally tried before an arbitration

---

1. In their appellate brief, appellants incorrectly asserted that this appeal is from the trial court order denying appellants' post-trial motions.

24

panel. Appellees were awarded $9,100.00; appellants appealed to the Court of Common Pleas of Lancaster County and appellees' award was increased to $10,077.00 at a bench trial.

Appellants aver that the trial court erred when it permitted appellees' expert to testify regarding the value of two antique carriages. We reverse.

Appellees owned two antique horse-drawn carriages—a surrey and a hearse. *Webster's Ninth New Collegiate Dictionary* defines an antique as "1. a relic or object of ancient times or of an earlier period than the present. 2. a work of art, piece of furniture or decorative object made at an earlier period and according to various customs laws at least one-hundred years ago." There is no requirement that functional objects other than furniture, as the surrey and hearse, be of substantial value, rare or at least one-hundred years old to be considered antiques according to either definition. The rare, ornate hearse contained elaborate wood carvings and was manufactured around 1887 by the James Cunningham Carriage Company of Rochester, New York. N.T., 6/24/88, at 8, 16, 36, 71. Each Cunningham hearse was inscribed with a serial number and was different from any other one manufactured by the company. *Id.* at 16. The Cunningham Company specialized in the manufacture of carriages and hearses. *The Encyclopedia of Collectibles*, Time–Life Books. If a serial number is stamped on the seat under the cushion of a Cunningham carriage, the identity of the original purchaser, price paid and date of purchase can be ascertained through company records. *Id.* Appellees painted the undercarriages of the vehicles themselves and stripped and primed the upper portions in preparation for professional paint work by appellants. N.T., 6/24/88, at 12. The carriage was an Extension Top Phaeton, but we were not provided with the identity of its manufacturer or date of manufacture. Virtually all of the carriages and horse-drawn hearses that survive in the United States date from 1800 to approximately 1910, when the automobile made its appearance. *The Encyclopedia of*

*Collectibles, supra.* All horse-drawn carriages were made almost entirely of wood; metal was only used in axles, tires, bolts, etc. *Id.* Appellees took photographs of the carriages before they were delivered to appellants, and a contract was entered into whereby appellants were to paint the surrey and the hearse. They were destroyed in a fire at appellants' place of business which is located in Intercourse, Pennsylvania, an area containing numerous Amish residents. Appellants admit liability. The issues on appeal only concern the amount of damages.

Appellants claim that Joyce Cusano, appellees' expert witness regarding the value of the destroyed surrey and hearse, was unqualified to testify as an expert relative to either item.

Mrs. Cusano was employed at the time of trial by Vintage Auto Appraisal Services of Schenectady, New York. N.T., 6/24/88, at 21. She worked with her employer, Paul Podvesa, who is an appraiser of all types of motorized vehicles and is the owner of the agency. The agency also appraises antique automobiles as well as farm equipment. *Id.* at 24, 28. Mrs. Cusano was classified as his assistant and an appraiser. She was previously employed in the insurance business as a clerical supervisor for sixteen years and also worked in the casualty claims area. *Id.* at 21. She had been employed for four years prior to and at the time of trial as an appraiser of motor vehicles (cars and light trucks), and had a New York State appraiser's license. *Id.* at 22.

After the fire, appellees presented Vintage Auto with pre-fire photographs of the surrey and the hearse. Neither Mrs. Cusano nor Mr. Podvesa, her employer, ever saw the hearse or surrey but obtained a signed, notorized statement from appellees which contained a description of the carriages before the fire. *Id.* at 33. Appellees requested an appraisal of the value of each.

Mrs. Cusano and her employer, Mr. Podvesa, mailed thirty form-letter inquiries regarding the value of the hearse to museums, carriage associations, restorers and

collectors in the United States and Canada. *Id.* at 25, 34. She helped Mr. Podvesa compile the eight to ten responses, many of which contained appraisals of the hearse; Cusano and Podvesa then averaged the wide range of price quotes received. *Id.* at 25, 34, 39–40. The responses, from persons with knowledge of and familiarity with antique carriages (the term is used generically to include hearses), were based on sales of similar Cunningham hearses or were simply an appraisal of appellees' hearse. Cusano also testified that she did research at local museums and libraries on the value of the hearse, but she did not elaborate on the extent or depth of her research or what knowledge was gleaned from her efforts. *Id.* at 22, 25, 26. She testified that she researched the value of the hearse in the same manner that she would have researched the value of a rare antique automobile, but she did not amplify on what the research of the latter would entail. *Id.* at 28–29. Mrs. Cusano and Mr. Podvesa worked jointly on the appraisal of the hearse, but he exercised ultimate authority over the content of the appraisal; Cusano also typed the appraisal. Mrs. Cusano's only work on and familiarity with the appraisal of the surrey was typing her employer's appraisal of it. *Id.* At trial, Mrs. Cusano appraised the hearse at $10,000.00 and the surrey at $4,198.45.

Appellants' expert, Paul Martin, Jr., was an experienced auctioneer who specialized in the auction of antiques, including horse-drawn carriages and hearses. *Id.* at 58. He sold three to four hundred carriages and a few hearses, some of them Cunninghams, per year in Pennsylvania and throughout the United States. *Id.* at 65. Martin also appraises five to twenty carriages per year and has given expert testimony in the past regarding the appraisal of carriages. *Id.* at 63. He placed the value of the hearse at $4,000.00 and the surrey at $2,500.00. Martin based his appraisals on photographs of appellees' vehicles and his inherent familiarity with the sale prices of comparable horse-drawn vehicles.

Although Martin's qualifications as an expert are not an issue in this case we believe that he possesses such qualifications.

The trial court found in appellees' favor in the amount of $10,077.00 which appears to be a compromise figure since there is no indication as to the value the trial court allocated to each item nor the manner in which he arrived at the total value.

Our search of the caselaw from Pennsylvania and other jurisdictions regarding the appraisal of the value of antiques reveals that the cases only address whether an appraiser's estimate, in each particular case, was reasonable. The cases do not address the qualifications an appraiser should have in order for him or her to competently undertake the appraisal of the value of an antique. The cases do not enlighten us either as to commonly accepted practices in the appraisal of the value of antiques of any kind. We therefore approach this case as we would any other case in which expert testimony is involved.

Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion. *Lira v. Albert Einstein Med. Center,* 384 Pa.Super. 503, 559 A.2d 550 (1989). If a witness has any reasonable pretension to specialized knowledge on the subject under investigation she may testify, and the weight to be given to her testimony is for the trier of fact. *Id.* Although the witness must demonstrate some particular knowledge or skill, there is no requirement that a witness acquire that knowledge as a result of formal schooling; expertise acquired by experience is expertise nonetheless. *McDaniel v. Merck, Sharp & Dohme,* 367 Pa.Super. 600, 533 A.2d 436 (1987).

> The determination of whether a witness is a qualified expert involves two inquiries: When a witness is offered as an expert, the first question the trial court should ask is whether the subject on which the witness will express an opinion is so distinctly related to some science, profes-

sion, business or occupation as to be beyond the ken of the average layman. If the subject is of this sort, the next question the court should ask is whether the witness has sufficient skill, knowledge, or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.

*Id.*, 367 Pa.Super.Ct. at 608, 533 A.2d at 440; *Dambacher v. Mallis*, 336 Pa.Super. 22, 35–36, 485 A.2d 408, 415 (1984).

It may appear that the scope of the witness's experience and education may embrace the subject in a general way, but the subject may be so specialized that regardless, the witness will not be qualified to testify. *Id.; Norwood A. McDaniel Agency v. Foster*, 117 Pa.Commw. 227, 543 A.2d 155 (1988). For example, every doctor possesses a general knowledge of the human body. But an ophthalmologist is not qualified to testify concerning the causes and treatment of heart disease. *Dambacher, supra; Arnold v. Loose*, 352 F.2d 959 (3rd Cir., 1965). Nor is a radiologist qualified to testify regarding proper surgical procedure in a chest operation. *Dambacher, supra; Hunt v. Bradshaw*, 251 F.2d 103 (4th Cir., 1958).

A witness need not be qualified as an expert to give an opinion as to value; the opinion may be based in part from information received from others. *Consylman v. Garrett*, 51 Lanc.Rev. 257 (1948). While a valuation expert may consider facts and data supplied by others in arriving at her opinion, even though she had no personal knowledge thereof, she may not insert the facts and and data verbatim into her own testimony. *In Re Norco Foundry Condemnation*, 18 Ches.Co.Rep. 185 (1970).

When our court finds that a witness in the trial court was unqualified to express an opinion, the proper remedy is to grant a new trial. *Dambacher v. Mallis, supra.*

We find that Mrs. Cusano was unqualified to testify regarding the value of the antique surrey or hearse. A determination of the value of the two antique carriages is a task that is beyond the capability of the average layperson.

In addition to age, an evaluation of an antique would entail knowing the history of the item, its use, ownership, manufacturer, description and design, as well as personalities and events associated with the antique. The carriages, because of their age (the hearse was 100 years old) and rarity were more akin to a "surrey with the fringe on top" than to a product manufactured today and more readily capable of valuation. *Oklahoma*, lyrics by Oscar Hammerstein, 2d. Therefore, pursuant to the first precondition of *Dambacher, supra*, only the testimony of a qualified expert knowledgeable on the subject matter should have been permitted. But, we must also determine if Mrs. Cusano possessed sufficient skill, knowledge or experience in the field of the appraisal of antique horse-drawn carriages to make it appear that her opinion would probably aid the trier of fact.

Mrs. Cusano's only involvement with the appraisal of the surrey was typing the appraisal for her employer. She had never appraised a surrey and did not assert that she possessed any expertise that would enable her to do so. Her efforts amounted to nothing more than a secretary testifying that "this is what my employer found that the surrey was worth and I agree with him." We therefore hold that the trial court erred when it permitted Mrs. Cusano to give an expert opinion as to the value of the surrey, and we reverse and remand this issue for a new trial regarding its value.

We now turn to Mrs. Cusano's appraisal of the antique hearse. She had never before appraised a horse-drawn hearse; only automobiles and light trucks. In terms of technology and method and materials of construction, the latter are incapable of comparison with the former. While she testified that she possessed a New York State appraisers license, she failed to elucidate on the requirements for obtaining one or exactly what it qualified her to appraise. As previously mentioned, Cusano testified that her employer exercised ultimate authority over the appraisal of the hearse.

While Mrs. Cusano did research, we are uninformed as to the extent of the research, the sources from which she garnished her information and what knowledge was gained therefrom. Cusano and her employer averaged the wide range of appraisals received from third parties, but her apparent lack of knowledge regarding the value of antique horse-drawn carriages precluded her from determining whether the various appraisals were reasonable. As was stated earlier, there is more than just age that goes into establishing the value of an antique. While Cusano's appraiser's license and experience appraising automobiles and light trucks may have given the trial court the impression that Cusano's experience embraced the subject of the appraisal of the antiques in question in a general way, the subject is so specialized that in our view this witness was not qualified to testify. *Dambacher, supra; Norwood A. McDaniel Agency v. Foster, supra.*

■ Although, in general, an owner of property, *Ernsberger v. Zoning Bd. of Adjustment*, 109 Pa.Commw. 373, 531 A.2d 98 (1987), Alloc. dn. in 517 Pa. 625, 538 A.2d 878, and an owner of personalty, *Kremer v. Janet Fleisher Gallery, Inc.*, 320 Pa.Super. 384, 467 A.2d 377 (1983), may testify as to value of the property or personalty in civil cases, we believe that an antique appraiser without an ownership interest must be held to a higher standard. An appraiser of antiques must possess knowledge of or experience in dealing with the particular type of antique involved; a general appraiser's license is not sufficient.

Judgment reversed and case remanded to the trial court with directions consistent with this opinion; jurisdiction relinquished.

WIEAND, J., concurs in the result.

JOHNSON, J., files a dissenting opinion.

JOHNSON, Judge, dissenting:

. I respectfully dissent. Although I am in agreement with the majority's statement of the law in determining whether

a witness is a qualified expert, my review of the record leads me to conclude that the trial judge did not abuse her discretion by allowing the testimony of Joyce Cusano.

The Lapps contend that Cusano was unqualified to testify as an expert on the value of the hearse and the surrey. The record reveals that the Palmer's attorney went through the proper steps to have Cusano qualified as an expert appraiser. N.T. June 24, 1988 at pp. 21–32. Testimony was elicited from Cusano that she had an appraiser's license and had been employed by Vintage Auto Appraisal Services for four years as an appraiser. However, the trial court limited her testimony according to her experience. During her testimony the court concluded in response to opposing counsel's objection to Cusano's qualifications:

\* \* \* \* \* \*

I'm going to accept her as qualified to testify as to two vehicles [the hearse and the surrey]. The Court will keep in mind the limitations as to her qualifications and her opinion as to the surrey in that she didn't see it. The Court will keep this in mind in making a decision as to what part of her testimony I will accept.

N.T. June 24, 1988 at pp. 31–32.

I would not reverse the decision of the trial court to admit Cusano's expert testimony absent an abuse of discretion. *Lira v. Albert Einstein Medical Center*, 384 Pa.Super. 503, 559 A.2d 550 (1989). A review of the record divulges no abuse of discretion, especially in light of the court's above articulation of how it would weigh Cusano's testimony.

Cusano testified that rare vehicles such as the hearse and the surrey must be carefully researched to uncover their true value. N.T. June 24, 1988 at p. 29. Cusano researched the value of the hearse, and mailed queries to 30 carriage experts, museums, collectors and restorers throughout the United States and Canada. N.T. June 24, 1988 at pp. 25, 34. Eight to ten responses proved reliable. N.T June 24, 1988 at p. 34. She also reviewed her employer's report on the value of the hearse and the surrey and viewed photographs of both vehicles. N.T. June 24, 1988 at pp. 32–34, 36.

32

Based upon all of this, Cusano testified that the hearse and the surrey were worth $10,000.00 and $4,198.45 respectively. N.T. June 24, 1988 at pp. 34–36.

The majority suggests that Cusano's testimony is improper because she inserted the facts and data supplied by those who responded to the queries into her own testimony, representing that they were her own opinion. Majority opinion at pp. 29–30. This is misleading; first, Cusano did not attribute the opinions to herself. Most important, the reports that incorporated the letters in response to Cusano's queries were moved into evidence by the Palmers' attorney. N.T. June 24, at pp. 19–20. Thus, regardless of Cusano's qualifications as an expert, the court had independent evidence of appraisal values before it when it determined the amount of damages the Palmers were to receive. Therefore, even if the trial court had erred in qualifying Cusano as an expert, it was harmless error; her testimony was essentially corroborative of the duly admitted documentary evidence.

The majority relies on *McDaniel v. Merck, Sharp, & Dohme*, 367 Pa.Super. 600, 533 A.2d 436 (1987), and *Dambacher v. Mallis*, 336 Pa.Super. 22, 485 A.2d 408 (1984) to support its position that Cusano should not have been permitted to testify on the value of the two items in question. I believe that these cases support the admission of Cusano's testimony. Although some of the witnesses who testified in *McDaniel* and the witness who testified in *Dambacher* were found to be unqualified to testify as experts, both cases support the proposition that a witness is properly qualified to give expert opinion testimony when the witness has sufficient skill, knowledge, or experience in the field or calling as to make it appear that his opinion will aid the trier in his search for the truth. *McDaniel, supra; Dambacher, supra.* Here, the trial judge found Cusano possessed the sufficient skill, knowledge, and experience to value the property, and we see no abuse of discretion in this finding.

The trial judge carefully considered all of the testimony before her and determined the value of the hearse and the surrey together to be $10,077.00. I would affirm the order of the trial court.