J-S15006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HAKIM MALIK, | |
| Appellant | No. 52 EDA 2015 |

Appeal from the Judgment of Sentence Entered December 12, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):
CP-51-CR-0000834-2013

BEFORE:  BENDER, P.J.E., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED FEBRUARY 29, 2016**

Appellant, Hakim Malik, appeals from the judgment of sentence of an aggregate term of four to eight years' incarceration, imposed after a jury convicted him of possession with intent to deliver a controlled substance (PWID) and possession of a controlled substance.  Appellant argues that the trial court erred by allowing the Commonwealth to introduce an expert witness to opine about Appellant's intent to deliver the drugs he possessed. We affirm.

The trial court summarized the facts of Appellant's case, as follows:

> On August 25, 2012, at 12:30[]pm, Philadelphia Police Officer Edgar Melendez conducted surveillance at 1208 West Rockland Street.  Officer Melendez was in an unmarked vehicle

_____

[*] Retired Senior Judge assigned to the Superior Court.

approximately 25 to 30 feet away from the property, and he had a clear unobstructed view of the property from his vehicle. Upon arriving at that location, Officer Melendez observed [Appellant], who was wearing a gray t-shirt and black shorts, standing in front of 1208 West Rockland Street.

Five minutes later, a male wearing a tan hat and red [t]-shirt, later identified as James Wilkerson, walked past the police vehicle and toward [Appellant]. Officer Melendez observed Wilkerson engage in a hand-to-hand transaction with [Appellant] whereby Wilkerson passed U.S. currency to [Appellant]. Upon receiving the money, [Appellant] and Wilkerson engaged in a brief conversation. [Appellant] placed the money into a wallet in his back shorts pocket and then walked down a small breezeway between the houses located at 1206 West Rockland Street and 1208 West Rockland Street; Wilkerson remained on the sidewalk. Although Officer Melendez could not see down the breezeway, he noted that [Appellant] was absent for one minute. When he returned, Officer Melendez observed [Appellant] make a closed-fist to open-palm transaction whereby he placed a small object in Wilkerson's hand. Wilkerson then immediately left the area. [Appellant] walked back through the breezeway, returned one minute later on a bicycle, and then travelled east toward 11th Street on his bicycle.

Officer Melendez relayed "flash" information of [Appellant] and Wilkerson to backup officers. Within minutes, Officer Daniel Adams observed Wilkerson travelling on the 4800 block of Camac Street as an individual that matched the "flash" information. Officer Adams identified himself as a police officer to Wilkerson, who[,] in response[,] stopped walking and dropped a small item to the ground. Officer Adams recovered the item, which was a small blue plastic packet containing crack cocaine.

Also within minutes of receiving the same "flash" information, Officer Mark Johnson observed [Appellant] travelling east on Rockland Street on a bicycle. Officer Johnson approached [Appellant] and identified himself as a police officer. In response, [Appellant] got off the bicycle and discarded a small black plastic film case on the ground. Officer Johnson recovered the black plastic film case about three to four feet from [Appellant]. Inside the case, Officer Johnson recovered eight blue alprazolam pills. Incident to arrest, Officer Johnson recovered $50 from Defendant's back shorts pocket in denominations of three $10 bills and four $5 bills.

- 2 -

Officer Melendez directed Officer Tyrik Armstead to investigate the breezeway between 1206 West Rockland and 1208 West Rockland Street. Officer Armstead walked through the breezeway and observed a wooden shed at the back of 1206 West Rockland. Officer Armstead recovered two clear sandwich bags from behind a wooden pillar that supported the shed. One bag contained 25 clear plastic baggies containing crack cocaine and a tan pill bottle that was missing a label and contained two codeine and acetaminophen pills. The other bag contained 69 clear plastic baggies containing heroin that were packed in bundles held by rubber bands: four bundles each contained 14 baggies and one bundle contained 13 baggies.

At trial, Officer Kevin Keys testified as an expert witness on the manufacturing, sales, packaging, and distribution of narcotics in Philadelphia.[1] The trial court limited Officer Keys' testimony to whether the possession of codeine and acetaminophen pills, alprazolam, and heroin was consistent with the intent to deliver. Because there was testimony related to an observed sale of crack cocaine, the trial court prohibited Officer Keys' from rendering any opinion regarding whether the crack cocaine was possessed with the intent to deliver. The trial court also instructed the jury that it could consider Officer Keys' testimony only as it related to the possession of codeine and acetaminophen pills, alprazolam, and heroin.

Officer Keys testified that it was his expert opinion that[,] whoever possessed the heroin[,] possessed it with the intent to deliver based upon, *inter alia*, the large number of heroin packets, the form of the bundles and the purchasing habits of heroin addicts. He also testified that[,] whoever possessed the pills[,] possessed them with the intent to deliver based upon, *inter alia*, that the pills were part of a larger narcotics stash and the type of containers (a black film case and a pill bottle missing the label). Because the heroin and pills were secreted in a stash location, Officer Keys testified that it would be extremely unlikely that, based on buying patterns of drug users in Philadelphia, the heroin and pills were possessed for personal use.

_____

[1] Officer Keys was qualified as a narcotics expert based upon his 26 years of experience as a police officer. For the last 20 years, he was assigned to conduct narcotics investigations, including undercover buys and surveillance

of street corner drug sales. He also received various narcotics training with the F.B.I., A.T.F., and the National Guard, including training in drug testing and identification. Officer Keys completed educational courses in pharmaceuticals and buyer behaviors, and he has been qualified as an expert more than 1500 times in drugs cases.

Trial Court Opinion (TCO), 6/10/15, at 1-4 (citations to the record omitted).

At the close of Appellant's trial, the jury convicted him of PWID and possession of a controlled substance. On December 12, 2014, the court sentenced Appellant to a term of 4 to 8 years' incarceration, followed by 5 years' probation, for his offense of PWID. Appellant's conviction for possessing a controlled substance merged for sentencing purposes.

Appellant filed a timely notice of appeal, and also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The court filed a Rule 1925(a) opinion on June 10, 2015. Herein, Appellant raises one issue for our review: "Did not the trial court err by allowing expert testimony by a police officer opining that the heroin, codeine, and alprazolam were possessed with intent to deliver in light of testimony of an actual delivery of cocaine?" Appellant's Brief at 3.

> Our standard of review in cases involving the admission of expert testimony is broad: "Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." ***Commonwealth v. Brown***, 408 Pa.Super. 246, 596 A.2d 840, 842 (1991), *appeal denied,* 532 Pa. 660, 616 A.2d 982 (1992) (quoting ***Palmer v. Lapp***, 392 Pa.Super. 21, 572 A.2d 12, 15–16 (1990)). An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice. ***Brown, supra***.

- 4 -

In PWID cases, regarding evidence of a defendant's "intent to deliver," this Court has said that expert testimony is admissible to prove whether the amount of drugs recovered in the defendant's possession was consistent with an intent to deliver or an intent to posses[s] for personal use. **Commonwealth v. Ariondo**, 397 Pa. Super. 364, 580 A.2d 341 (1990), *appeal denied,* 527 Pa. 628, 592 A.2d 1296 (1991). Nevertheless, expert testimony is inadmissible if the jury can easily comprehend that the drugs recovered were possessed with the intent to deliver without the assistance of an expert. [**Commonwealth v.**] **Carter**, [589 A.2d 1133,] 1135 [(Pa. Super. 1991), *appeal denied*, 597 A.2d 1151 (Pa. 1991)]. When the expert's testimony corroborates a drug transaction, which is obvious to an average layperson, it invites the trier of fact to abdicate its responsibility and defer to the assessment of the expert. **Id.**

**Commonwealth v. Watson**, 945 A.2d 174, 176 (Pa. Super. 2008).

Here, Appellant first stresses that Officer Melendez testified that he observed Appellant engage in a drug transaction with Wilkerson, whereby Appellant provided Wilkerson with crack cocaine. Appellant then contends that,

[i]f the jury believed the testimony about a transaction involving one drug, they could infer, based upon their experience with the ordinary affairs of life, that the pharmacopeia of illegal drugs found in the stash location were possessed with intent to deliver. Common experience would dictate that if the cocaine packaged for distribution and matching that seized from the buyer in an observed transaction was in the same stash as other drugs packaged for distribution, then the other drugs were possessed for delivery purposes. Thus, the subject was not one requiring an expert's interpretation of the evidence. Thus, it was error to allow expert testimony that all the other drugs found in [A]ppellant's stash after the arrest were possessed with intent to deliver even though no expert testimony was allowed as to the specific drug involved in the transaction.

Appellant's Brief at 9-10.

Appellant's argument is unconvincing. It is true that Officer Melendez testified that he observed Appellant selling Wilkerson crack cocaine; however, the trial court properly ruled that Officer Keys could not offer cumulative, expert testimony about Appellant's obvious intent to deliver that controlled substance. Further, we disagree with Appellant that from Officer Melendez's testimony regarding Appellant's sale of crack cocaine, the jury could have easily concluded that Appellant possessed the alprazolam, codeine, and heroin with the intent to deliver. Instead, a lay juror could have inferred that Appellant possessed the alprazolam and codeine for his personal use, based on the seemingly small quantities of those pills. Additionally, a juror could have believed that Appellant's storing the pills together in small bottles, rather than in separate packets as he stored the crack cocaine, meant they were not 'packaged' for sale, as Appellant contends.

Officer Keys' expert testimony aided the jury in understanding the implications of these facts. For instance, regarding the packaging of the pills, Officer Keys, explained:

> [Officer Keys:] 90 percent of the time, when it comes to the illegal sales of pills, when buyers get the pills, they get them loose, but when they're in some form of container, it's generally associated with a distributor.
>
> …
>
> And then the reason for the containers with a distributor is because each pill has a dollar amount. And so in regard to the [alprazolam] pills, the pill could either be $3 or $5, but the point is, is that the container is consistent with a distributor because

> when they're making transactions, if they had the container on them, they won't lose anything, such as, if they were loose in their pocket.
>
> …
>
> The other reason for the container is that it could be stashed at a location or it could be secreted on their person. The other reason for the container is that if the police come up, then you can discard the container and everything will be in the container and no residual packets would be in your pocket, such as what happened in this particular case that they were discarded.

N.T. Trial, 10/15/14, at 192-93. Officer Keys also stated that the fact that the pills were in different containers, one of which was included in the stash found near the shed, indicated that Appellant intended to sell those pills. *Id.* at 193.

Officer Keys' testimony also assisted the jury in assessing whether Appellant possessed the heroin with the intent to deliver. As the Commonwealth points out, "Officer Keys'[] expert opinion that [Appellant] possessed heroin with the intent to deliver was based on a number of factors – such as the typical quantity of heroin consumed by users in Philadelphia, the cost of heroin, the typical packaging of heroin and painkillers for sale, and the practices of dealers with respect to intermingling different types of drugs – that were outside the knowledge of an ordinary layperson and helpful to understanding the evidence and determining the critical fact of [Appellant's] intent." Commonwealth's Brief at 9; *see also* N.T. Trial at 183-87 (Officer Keys' explaining his basis for opining that the heroin was possessed with the intent to deliver).

In sum, we disagree with Appellant that the jury could have easily understood that the alprazolam, codeine, and heroin were possessed with the intent to deliver simply based on Officer Melendez's testimony that he observed Appellant's selling crack cocaine. Thus, the trial court did not abuse its discretion in permitting the Commonwealth to present Officer Keys' expert testimony to assist the jury in assessing the evidence and determining if Appellant possessed those drugs with the intent to deliver. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/29/2016