J-S79001-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FRANCIS KOCHMER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOSEPH HOPFNER AND APPLE | : | No. 637 EDA 2017 |
| CONSTRUCTION, INC. A/K/A APPLE | : | |
| CONSTRUCTION | : | |

Appeal from the Order Entered January 12, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): August Term, 2013, No. 1308001

BEFORE: GANTMAN, P.J., LAZARUS, J., and OTT, J.

MEMORANDUM BY OTT, J.: **FILED JUNE 20, 2018**

Francis Kochmer appeals from the January 12, 2017, judgment entered by the Court of Common Pleas of Philadelphia County in favor of Joseph Hopfner and Apple Construction, Inc. a/k/a Apple Construction ("Apple Construction) (collectively, "Defendants"). On appeal, Kochmer raises several claims concerning whether the trial court erred in admitting testimony from the defense accident reconstruction expert. Based on the following, we affirm.

The trial court set forth the factual history as follows:

Mr. Kochmer, age 52, suffered from significant pre-existing infirmities and physical disabilities in September, 2011. He had a history of cardiac problems, peripheral vascular disease, stents in his legs, diabetes, and an inability to run.

[Kochmer] told the jury that at 7:00 p.m. on the evening of September 7, 2011, he smoked a marijuana cigarette laced with the liquid drug PCP. Mr. Kochmer testified that smoking the two

drugs relaxed him and did affect his ability to see. He denied feeling mellow or high. [Kochmer] became hungry and decided to talk to a Wawa store to buy an ice cream sandwich. The Wawa was located at the corner of Castor Avenue and Tyson Avenue, a few blocks from his residence.

At about 8:00 p.m., [Kochmer] was returning home and stood at the corner intending to cross Castor Avenue. Castor Avenue is six lanes wide including parking lanes on each side of the street. The cars travel Northbound and Southbound on this busy roadway. There are no concrete islands or median strips in the center for pedestrians to stand.

Mr. Kochmer told the jury that he looked to his left and saw car headlights about a block away. He said he then looked to his right and the cars were one block in the distance. When he looked ahead at the traffic signal the light was green and he started across the street. When he got to the middle of the street, however, the light changed to red for him and green for the cars in both directions of Castor Avenue[.] [Kochmer] testified that he decided to stop in the middle of Castor Avenue.

When [Kochmer] looked to his right, two cars were approaching him and passed in front of him. He told the jury that he did not take a step backwards, however, he turned towards the cars on his left and moved his feet "a little." When he turned toward the left[,] he was struck on the left side of his body by the left bumper of [Hopfner]'s truck. The force of impact spun him around causing him to hit his head into [Hopfner]'s side mirror.

[Kochmer] woke up in the hospital. He fractured his neck and spine and suffered serious and permanent injuries. He continues to suffer pain and will endure limitations of movement of his head, neck and body. He takes narcotic medications for his pain management.

[Hopfner] explained how Mr. Kochmer turned into his truck[:]

"As I was getting to where the crosswalk was, all of a sudden I saw a person walk backwards into the front side of my truck. It happened real fast and all I had time to do was --

I turned the wheel a little bit. And next thing I knew, my mirror goes smashed back and I hit Mr. Kochmer."

Mr. Hopfner testified that at 8:00 p.m. on September 7, 2011, he was driving home from work on Castor Avenue. Mr. Hopfner had the green light on Castor Avenue. He observed a pedestrian cross the street about one-half block ahead. The pedestrian crossed through a red light from the corner and across the lanes of traffic. Mr. Hopfner took his foot off of the gas pedal to slow down. He lost sight of the pedestrian. As he approached Tyson Street, his side mirror smashed into Mr. Kochmer, who fell to the roadway. Mr. Hopfner stopped and parked his work truck next to [Kochmer] so that cars would not run him over.

Trial Court Opinion, 3/2/2017, at 1-4 (record citations omitted).

On August 5, 2013, Kochmer initiated this action, alleging negligence against Hopfner and Apple Construction.[1] Defendants filed an answer with new matter and cross-claim to Kochmer's complaint. In their new matter, Defendants asserted Kochmer's claims, *inter alia*, were barred and/or limited by the provisions of Pennsylvania Comparative Negligence Act, 42 Pa.C.S. § 7102, and the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. § 1701, *et seq*.

Pertinent to this appeal, Defendants provided Kochmer with a copy of a report authored by their accident re-constructionist, Robert T. Lynch, P.E., dated February 13, 2015. In Lynch's report, he opined the following, in relevant part:

_____

[1] Kochmer asserted Hopfner was an "agent, work-person, employee, and/or representative" of Apple Construction, and Apple Construction negligently entrusted the motor vehicle to Hopfner. **See** Complaint, 8/5/2013, at ¶ 6.

Whether or not Mr. Kochmer fell into the pickup truck as it passed by is evaluated against the physical evidence which presented itself as the damage to the left side of the pickup truck. The first point of contact between the pickup truck and Mr. Kochmer occurred to the left front fender of the pickup truck. Mr. Kochmer did not come in contact with the front of the pickup truck. Mr. Hopfner was operating the pickup truck northbound within the left-lane with intentions to travel straight through the intersection at Tyson Avenue. As such, the pickup truck was moving forward at the time of the initial impact with Mr. Kochmer's body and it had no lateral motion. The initial contact between Mr. Kochmer's body and the pickup truck caused a dent to the left front fender. This dent could only have occurred as the result of a lateral impact force during the initial point of impact. Therefore, a relative lateral motion between Mr. Kochmer's body and the side of the pickup truck needed to have occurred in order for the dent to have existed. Since the truck had no lateral motion as it traveled straight through the intersection, Mr. Kochmer must have been moving towards the passing pickup truck at the initial point of impact. This finding is consistent with Mr. Hopfner's testimony that Mr. Kochmer was moving backwards into his truck at the point of impact as well as Ms. [Fern] Dipentino's statement and the narrative in the police report that Mr. Kochmer stumbled into the truck at impact.

Mr. Kochmer testified that he did not fall into the truck at impact, but his height compared to that of the driver's side mirror indicates otherwise. The available material indicates that Mr. Kochmer's head came in contact with the driver side mirror on the pickup truck during the impact event. The EMS report indicates that Mr. Kochmer received a laceration to the top of his head. The top of the driver side mirror of the pickup truck was measured to be 4 feet 10 inches off the ground. Mr. Kochmer testified that he was 5 feet 7 inches tall at the time of the incident. Therefore, at the point Mr. Kochmer's head came in contact with the driver side mirror it would have been more than 9 inches lower than his erect standing height. This indicates that Mr. Kochmer was in fact in a less than erect standing position when contact was made with the driver side mirror, in a posture consistent with a fall or stumble.

It was claimed that the initial impact between Mr. Kochmer's body and the left front fender of the pickup truck caused Mr. Kochmer's body to spin around and be positioned in an orientation that placed his head at the height of the driver's side mirror. However, a

- 4 -

mathematical analysis utilizing the geometry of the pickup truck along with its speed at impact indicates that had the initial impact between Mr. Kochmer and the left front fender initiated the fall, his head would have dropped less than 2 inches from the point of impact to the point where the driver side mirror would pass by Mr. Kochmer's body as it traveled through the intersection. This drop in height would not have positioned the top of Mr. Kochmer's head at a height necessary to cause his laceration from the driver side mirror. Therefore, Mr. Kochmer was already in a posture consistent with a stumble or fall into the truck at the point of initial impact. The available evidence indicates that at the point of impact Mr. Kochmer was falling into the left side of the pickup truck.

Traffic Crash Reconstruction Analysis Report at 8, Exhibit 1 to Kochmer's Motion *in Limine* to Preclude Defendant from Referencing or Introducing Evidence of Their Accident Re-Constructionist, Robert T. Lynch, P.E., and His Report, 9/4/2015.

On September 4, 2015, Kochmer filed a motion *in limine* to preclude Defendants from introducing into evidence or referencing Lynch and his report. Specifically, Kochmer argued:

19. Mr. Lynch states in his report at page 8, that he can prove [Kochmer] fell, as opposed to walked backward or was standing still, at the moment immediately prior to impact. He states this can be proven with mathematical analysis utilizing geometry or Defendants' truck. Mr. Lynch does not identify the mathematical analysis, nor does he show any analysis. He does not discuss or explain the geometry of the truck. Yet, he concludes based on this phantom analysis and set of facts, that [Kochmer] fell into the truck, despite [Kochmer and Hopfner] testifying under oath that [Kochmer] did not fall into the truck.

Defendant Joseph Hopfner stated in his deposition:

Q. And then is it correct the next time you see Mr. Kochmer is, I think you said, a split second before the accident happened?

A. He walked backwards into my truck.

[See Defendant Hopfner's deposition at Page 33, Lines 15-20, attached hereto and marked "Exhibit 3".]

Plaintiff Francis Kochmer stated in his deposition:

Q. Did you fall into the truck?

A. No.

[See Plaintiff, Francis Kochmer's deposition at Page 49, Lines 11-12, attached hereto and marked "Exhibit 4"].

20. Pennsylvania Rule of Evidence 705 states: The expert may testify in terms of opinion or inference and give reasons therefore; however the expert must testify as to the facts or data on which the opinion or inference is based.

21. [Kochmer] served expert interrogatories upon Defendants. Pursuant to Pennsylvania Rule of Civil Procedure 4003.5, Defendants elected not to answer the interrogatories but rather supplied an expert report from Robert T. Lynch, P.E.

22. Pennsylvania Rule of Civil Procedure 4003.5[(c)] requires an expert to disclose all facts held and opinions offered.

23. Defendants should be precluded from offering Mr. Lynch's testimony or report as it relates to Mr. Kochmer's head injury as proof he fell into Defendants' truck.

Motion *in Limine* to Preclude Defendant from Referencing or Introducing Evidence of Their Accident Re-Constructionist, Robert T. Lynch, P.E., and His Report, 9/4/2015, at ¶¶ 19-23.

On September 11, 2015, Defendants filed an opposition to Kochmer's motion *in limine* to preclude Lynch and his report. Subsequently, on July 19,

2016, the trial court denied Kochmer's motion.[2] The case proceeded to a week-long trial. On July 22, 2016, a jury rendered a verdict in favor of Hopfner and Apple Construction. The jury considered the comparative negligence of the parties and determined that Kochmer was 60% causally liable for his own injuries. On January 12, 2017, after post-trial motions were denied, judgment was entered in favor of all Defendants. This appeal followed.[3]

Based on the nature of Kochmer's claims, we will address them together. First, Kochmer asserts Pennsylvania Rule of Civil Procedure 4003.5(a)(1) controls, but was ignored by the trial court. **See** Kochmer's Brief at 24. Specifically, he states, "It is axiomatic that Mr. Lynch should have been precluded from testifying to his egregiously prejudicial and unsupported 'falling into the truck' opinion, based on his failure to disclose the mathematical or other scientific analysis that were the grounds for his opinion." **Id.** (citation omitted). Second, he contends, "The Trial Court does not attempt to justify or even explain its real-time rulings allowing Mr. Lynch to testify without disclosing his mathematical analysis. Instead, the Trial Court *seems to suggest* that its rulings were harmless. Regardless, its

---

[2] The court precluded Lynch from referring to hearsay evidence regarding Kochmer's drug use.

[3] The court did not order Kochmer to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). On March 2, 2017, the trial court issued an opinion under Pa.R.A.P. 1925(a), adopting its January 12, 2017 opinion, which was filed contemporaneous with its order denying post-trial motions.

reasoning, respectfully, is circular and illogical." *Id.* at 25 (italics in original). In addition to reiterating that the trial court did not adhere to Rule 4003.5(a)(1), Kochmer points to five additional aspects of the court's alleged error: (1) Kochmer's testimony, in which he admitted that he moved his feet and turned towards the vehicle, cannot justify Lynch's unsupported expert testimony; (2) "there is no such equivalency between the fact testimony and the expert testimony" and there was a "world of difference between a trapped pedestrian turning and simply moving his feet (the Trial Court leaves out the modifier 'a little'), and somebody falling into a truck;"[4] (3) the trial court seemed to suggest "the fact that '[t]he first impact was on the left side of his body' [was] incriminating. To the contrary, it [was] completely consistent with a rational, trapped pedestrian positioning his body so as to give oncoming traffic the narrowest possible object to avoid[;]"[5] (4) the jury should not have been assessing whether Kochmer fell or stumbled because "there was zero competent evidence that Kochmer fell or stumbled into the truck;"[6] and (5) the court's final statement, "'[t]he accident reconstruction expert was well-qualified to present his written report and trial testimony' [was] a blanket

---

[4] Kochmer's Brief at 26-27 (emphasis removed).

[5] *Id.* at 27.

[6] *Id.*

invocation that simply reads out expert opinion requirements."[7] Third, Kochmer argues the prejudicial impact of Lynch's "falling-into-the truck testimony" was decisive because this was "the only way the defense overcame the inexcusable fact that Hopfner wasn't looking where he was going" and Lynch's "baseless expert testimony *seemed* all the more believable because Kochmer had taken PCP an hour before." ***Id.*** at 28 (italics in original). Fourth, Kochmer claims the court impermissibly denied him Lynch's crucial mathematical analysis prior to the expert's testimony, which he "was not required to walk into any trap by himself asking the expert to reveal the 'calculation' for the first time during cross-examination," and it was "fundamental that [he] needed to know what was coming at trial," so that he could "prepare accordingly." ***Id.*** at 30. Lastly, Kochmer baldly asserts, "The ridiculous opinion that Mr. Lynch pronounced was worse than junk [science] – because he had no scientific data, no research and no analysis to support it, not even spurious or fraudulent data, research or analysis." ***Id.*** at 32.

Our standard of review in the consideration of a trial court's denial of a motion for a new trial is as follows:

> When assessing the trial court's denial of a motion for new trial, we apply a deferential standard of review. The decision whether to grant or deny a new trial is one that lies within the discretion of the trial court. We will not overturn such a decision unless the trial court grossly abused its discretion or committed an error of law that controlled the outcome of the case. Upon review, the test is not whether this Court would have reached the same result

---

[7] ***Id.*** at 28.

on the evidence presented, but, rather, after due consideration of the evidence found credible by the trial court, and viewing the evidence in the light most favorable to the verdict winner, whether the court could reasonably have reached its conclusion.

***B & L Asphalt Industries, Inc. v. Fusco***, 753 A.2d 264, 267 (Pa. Super. 2000) (internal citations and quotation marks omitted). Moreover, our standard of review regarding admission of evidence at trial is well-established:

The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus our standard of review is very narrow.... To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

***McManamon v. Washko***, 906 A.2d 1259 (Pa. Super. 2006) (internal citations and quotation marks omitted).[8]

With respect to expert witnesses, the Pennsylvania Rules of Evidence provide, in pertinent part:

**Rule 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

---

[8] "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused." ***Cigna Corp. v. Executive Risk Indem., Inc.***, 111 A.3d 204, 211 (Pa. Super. 2015).

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

> Our standard of review in cases involving the admission of expert testimony is broad: "Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." **Commonwealth v. Brown**, 408 Pa. Super. 246, 596 A.2d 840, 842 ([Pa.Super.1991), *appeal denied*, 532 Pa. 660, 616 A.2d 982 (1992) (quoting **Palmer v. Lapp**, 392 Pa. Super. 21, 572 A.2d 12, 15-16 (Pa.Super.1990)). An expert's testimony is admissible when it is based on facts of record and will not cause confusion or prejudice. **Brown, supra**.

**Commonwealth v. Watson**, 945 A.2d 174, 176 (Pa. Super. 2008).[9]

We note Kochmer relies on Rule 4003.5, which provides, in relevant part:

> **(a)** Discovery of facts known and opinions held by an expert, otherwise discoverable under the provisions of Rule 4003.1 and acquired or developed in anticipation of litigation or for trial, may be obtained as follows:
>
> > **(1)** A party may through interrogatories require
> >
> > > **(A)** any other party to identify each person whom the other party expects to call as an expert witness at trial and to state the subject matter on which the expert is expected to testify[.]

---

[9] "The admission of opinion evidence by experts, however, has never been held to take away from the jury its power and duty to determine the evidentiary facts." **Brueckner v. City of Pittsburgh**, 84 A.2d 197, 199 (Pa. 1951).

Pa. R.C.P. No. 4003.5

> Here, the trial court found the following:

> This argument is baseless, where as here, Mr. Kochmer himself admitted that he did move his feet and he did turn toward the vehicles on his left. The first impact was on the left side of his body. Whether Mr. Kochmer fell or stumbled or walked into the truck was assessed by the jury. The accident reconstruction expert was well-qualified to present his written report and trial testimony. ***Miller v. Brass Rail Tavern, Inc.***, 664 A.2d 525, 528 (Pa. 1995).

Trial Court Opinion, 3/2/2017, at 11 (record citation omitted).

We agree with the trial court's determination for several reasons. First, we note Kochmer ignores the fact that Lynch, in both his report and at trial, opined:

> [T]he initial impact occurred to the left front fender of [Hopfner's] pickup truck…. So based on the determination, the impact happened to the side of the vehicle. There had to be a lateral force to cause … a dent to that fender. And then that dent can only occur from a side force. If the truck is going straight, there has to be some side component that causes that dent. The only other way a side force could occur is from Mr. Kochmer moving towards the truck.

N.T., 7/20/2016, at 131-132. Lynch did not need a mathematical calculation to determine that since Hopfner's truck was traveling straight on the road, and there was a dent to the side of the vehicle, Kochmer must have been moving towards Hopfner's truck at the initial point of impact.[10] This deduction

---

[10] A different scenario would be present if the evidence that showed the truck's front bumper was dented, which would imply that Hopfner struck Kochmer first as opposed to the opposite.

- 12 -

simply required an observation regarding the condition of the truck. Any mathematical analysis regarding the initial impact would have been immaterial.

Second, with respect to Lynch's additional opinion that Kochmer was already in a posture consistent with a stumble or fall at the point of initial impact based on the laceration he received to the top of his head from hitting the driver's side mirror,[11] such an opinion also does not necessitate a mathematical analysis. One could reasonably deduce that if Kochmer is 5 feet 7 inches and the top of the mirror is 4 feet 10 inches, then it is obvious Kochmer had to have been in a less than erect standing position when he hit the mirror.

With respect to both scenarios, the jury had enough concrete facts, including the other evidence presented at trial, to decide which party was causally liable for Kochmer's injuries and a mathematical analysis explaining one of the impacts would not have affected the liability percentage to such a degree that Kochmer was prejudiced.

Additionally, we find Kochmer attempts to re-weigh the evidence with respect to his allegation that he was merely a trapped pedestrian, who had slightly moved his feet to avoid traffic.[12] We decline to do so. ***See Samuel-***

_____

[11] N.T., 7/19/2016, at 132-133.

[12] ***See*** Kochmer's Brief at 26-27.

- 13 -

***Bassett v. Kia Motors Am., Inc.***, 34 A.3d 1, 25-26 (Pa. 2011) (rejected implicit invitation by petitioner to reweigh the evidence). Furthermore, it merits mention that Kochmer did not request special interrogatories with respect to the verdict, which would have clarified the jury's basis for finding him 60% negligent. In addition to stumbling into the truck, the jury could have also determined he was negligent for crossing a busy street at night and/or ingesting drugs before venturing outside. Kochmer incorrectly assumes that his only fault was turning towards the truck.

Lastly, we note that while the trial court initially denied Kochmer's pre-trial request for Lynch's mathematical explanation, the court permitted Kochmer to question Lynch regarding this issue on cross-examination. ***See*** N.T., 7/18/2016, at 39 ("You can just ask [Lynch] what kind of mathematical analysis – I'm still not really sure what difference it makes whether the mirror hit the plaintiff or the bumper hit the plaintiff, but you can explain that to the jury, not to me."); ***see also*** N.T., 7/20/2016, at 94 ("[Y]ou can cross-examination [sic] Mr. Lynch and say why didn't you put [the numbers] in your report. What's the matter with your report? What numbers are you basing it on? You can do that.").

During Lynch's cross-examination, the following exchange took place between Kochmer's counsel and the expert:

> Q. Am I reading this correctly? This is your report with the typos that you didn't see. Let's see what you say about the calculations. Tell me if I'm reading this correctly: "It was claimed that the initial impact between Mr. Kochmer's body and the left front fender of

the pickup truck caused Mr. Kochmer's body to spin around and be positioned in an orientation that placed his head at the height of the driver's side mirror. However, the mathematical analysis, utilizing the geometry of the pickup truck, along with its speed at impact, indicates that the initial impact with Mr. Kochmer and the left front fender initiated – I'm sorry. Let me read the second sentence again. "However a mathematical analysis utilized in the geometry of the pickup, along with its speed at impact, indicates that had the initial impact between Mr. Kochmer and the left front fender initiated the fall, his head would have dropped less than two inches from the point of impact to the point where the driver's side mirror would pass by Mr. Kochmer's body as it traveled through the intersection."

Did I read that correctly?

A. Yes.

Q. So what you're saying is, now it's physics. You are saying based on your analysis utilizing physics, that Mr. Kochmer had to be moving into the truck, right?

A. The physics analysis --

Q. Is that a yes or no is that it?

[Defense counsel]: Your Honor --

[Lynch]: There is two different analyses here.

. . . .

[Plaintiff's counsel]: Your Honor, I really don't want a speech.

[Defense counsel]: But if he asked a question, and he doesn't give an answer. He is entitled to give an answer.

THE COURT: It's a yes or no. He hasn't said either one. You can say yes or no and then explain. But on cross-examination, it's a yes or no answer.

BY [Plaintiff's counsel]:

- 15 -

Q. Mr. Lynch, very simple, what you just said there means that my client was moving into the truck?

A. Yes, the dent on the fender.

Q. Yes?

A. Yes, correct.

Q. In your report you said that that's based on that mathematical analysis, right?

A. No. That's not what I say in my report. There is two different analyses there, and they are combined into one. Would you like me to explain?

Q. Do you use the word "mathematical" here?

A. That's a separate analysis in the dent analysis.

Q. There is also a physics analysis?

A. The dent is physics. This issue of whether or not his head could have come in contact with the mirror based on the initial impact with the front fender, is a mathematical analysis.

Q. How long is your report along with the typos?

A. Twelve pages.

Q. Where is the mathematical analysis?

A. I have a page showing the mathematical analysis. I can show and explain to the jury as well.

Q. Did you include it in your report?

A. I didn't feel it necessary to put every single calculation in the report. I put the conclusions in the report.

Q. This is your -- how many litigation cases where you've come to court and testified?

A. Fifth time testifying at trial, correct.

- 16 -

Q. And you [have] written investigation reports other than those five times, correct?

A. Correct.

Q. And you know that this is the report, this 12-page report, is the one that the plaintiff's get, right?

A. I do.

Q. And your mathematical analysis, your physical analysis, whatever you want to call the numbers, that leads you to your opinion that my client walked into the truck, they ain't in here, are they?

A. Again, you're combining two different – the conclusion of Mr. Kochmer walking into the truck is based on the dent. This mathematical analysis has to do with whether or not -- if that impact occurred to left front fender, he would have had to be in a less than erect position at impact in order for his head to be positioned where that driver's side mirror was for the head.

Q. Did you send Mr. DeLuca that mathematical analysis?

A. No.

Q. You've got it with you, right?

A. I do.

Q. It's not in the 12-pages, right?

A. I did not outline every single mathematical calculation.

Q. Did you outline any?

A. I put the conclusions in my report.

Q. But again, it's a fact that that dent was on the side -- I mean obviously if the dent is truly on the side, obviously, the motion must have been towards it, right?

A. Correct.

Q.  In fact, you don't even have to be a physicist to know that. That's common sense, right

A.  You can reach the conclusion as well as I can if you have a little bit of a physicist background.

N.T., 7/20/2016, at 150-154.  A review of this testimony reveals counsel's challenge was to the weight of the evidence and not the expert's credibility.

In summary, the record supports the trial court's analysis, and the court did not abuse its discretion in admitting Lynch's accident reconstruction expert testimony.  Kochmer's various arguments on appeal do not persuade us to reach another conclusion.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/18